279 F.2d 777
 COLONIAL STORES, INCORPORATED, Appellant-Appellee,
v.
CENTRAL OF GEORGIA RAILWAY COMPANY, Appellee-Appellant.
CENTRAL OF GEORGIA RAILWAY COMPANY, Appellant, Appellee,
v.
COLONIAL STORES INCORPORATED, Appellee, Appellant.
 No. 18109.
 United States Court of Appeals Fifth Circuit.
 June 20, 1960, Rehearing Denied Aug. 3, 1960.
 
 George B. Haley, Jr., Ernest P. Rogers, Atlanta, Ga., for appellant, Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., of counsel.
 C. B. Rogers, James K. Rankin, Atlanta, Ga., for appellee, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., of counsel.
 Before HUTCHESON, TUTTLE and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 A warehouse of Colonial Stores, Inc. was furnished with railway service by a spur track of the Central of Georgia Railway Company. These principals in this litigation will be referred to in this opinion as Colonial and Central. Colonial's warehouse platform was adjacent to Central's spur track. This track was built and maintained by Central pursuant to an agreement with Colonial which, among other things, provided:
 
 
 2
 'The Tenant (Colonial) also agrees to indemnify and hold harmless the Railway (Central) from loss, damage or injury from any act or omission of the Tenant, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation, while on or about said tracks; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto, it shall be borne equally by them.'
 
 
 3
 During a switching movement, one of the train crew, Ezra A. Jones, a switchman, was required to alight from the side of the car, which was being moved, according to his testimony, at three or four miles per hour, on to the Colonial platform. As he stepped to the platform he slipped on cabbage leaves, vegetable leaves, water and ice. 'One foot shot one way and one another way,' as he phrased it, and he 'just sprattled out and hit down.'
 
 
 4
 Jones brought an action against Central in the Superior Court of Fulton County, Georgia, seeking damages for his injuries and asserting negligence of Central in not providing him with a safe place to work in the discharge of his duties in alighting from the train upon the Colonial platform. Colonial rejected Central's demand that it assume the defense of the suit of Jones. A judgment against Central was entered for Jones. Central called upon Colonial to pay the judgment plus attorneys' fees, with costs and expenses of the litigation. Colonial declined to pay. Central then brought suit in the United States District Court, with jurisdiction based upon diversity of citizenship, claiming that it was entitled under the indemnity provisions to recover the amount of its loss or, in the alternative, one-half of the amount of its loss. Central's theory was that Colonial was negligent in allowing the debris to accumulate on the platform and that this negligence was the sole cause of the injury. In the alternative, Central contended that if the injury of Jones was caused by the joint or concurring negligence of Central or Colonial, Colonial would be liable to Central, under the agreement, for one-half of its loss.
 
 
 5
 The cause was tried to the court without a jury. Jones testified for Central. The warehouse superintendent and foreman testified for Colonial. The petition of Jones in the state court action and a transcript of the testimony there adduced were offered in evidence by Central and received without objection. The Court found,[1] among other things, that at the place where Jones stepped to the platform there were present vegetable leaves and crushed ice or water; that Central's conductor, before the switching movement commenced, walked the length of the platform but saw nothing that would, in his judgment, make the platform unsafe for use by Central's switching crew; and that the conductor gave no warning to Jones or the others of the train crew. The court concluded, as matters of law, that Colonical was negligent in causing or permitting vegetable leaves and crushed ice or water to accumulate on the platform; that Central was negligent in requiring Jones to step from the moving train to the unsafe platform and in failing ot warn him after the conductor had inspected the platform and knew, or should have known, of its condition; that the negligence of Colonial and Central jointly and concurrently caused the injury to Jones resulting in the liability to him of Central; that the negligence of each was active and primary; and that under the indemnity agreement the loss sustained by Central should be borne equally by Central and Colonial. Colonial has appealed, urging that it had no liability; Central cross-appealed asserting that the entire loss should be cast upon Colonial.
 
 
 6
 For the most part, the issues in this case are fact issues which the district court has decided. Its findings are not to be set aside unless clearly erroneous. Rule 52(a) Fed.Rules Civ.Proc. 28 U.S.C.A. There may be more than one proximate cause of an injury. Where the concurrent independent negligent acts of two tort-feasors unite in producing an injury the negligence of each is a proximate cause. Griffin v. Ross, 93 Ga.App. 407, 91 S.E.2d 815; Atlantic Coast Line Railroad Co. v. Daniels, 8 Ga.App. 775, 70 S.E. 203. The causing or permitting the accumulation upon the platform by Colonial of vegetable leaves, ice and water with the knowledge, actual or imputed, that trainmen of the railroad would or might step upon it from moving cars was found by the district court to be negligence and a proximate cause of the injury to Central's employee Jones. So too the court found that Central, in requiring or permitting Jones to step from a moving car to the platform upon which it knew or should have known that debris had been caused or permitted to accumulate without warning him, was guilty of negligence which was a proximate cause of the injury. These findings are supported by ample evidence. These questions are fact questions and were appropriately determined by the district court. Atlantic Coast Line Railroad Company v. Key, 5 Cir., 1952, 196 F.2d 64; Seaboard Air Line Railroad Co. v. Deese, 5 Cir., 1950, 185 F.2d 290; United States v. Hill Lines, 5 Cir., 1949, 175 F.2d 770; Sanders v. Leech, 5 Cir., 1946, 158 F.2d 486; Herrin Motor Lines, Inc. v. Jarvis, 5 Cir., 1946,156 F.2d 276.
 
 
 7
 Colonial urges that its negligence, if such existed, was merely passive or secondary and hence not a proximate cause of the injury. The passive, as opposed to active, negligence doctrine is one associated with the determining of liability of the owner or occupier of property to a licensee or trespasser as distinguished from an invitee. Cf. Boxley v. Williams Construction Co., 98 Ga.App. 662, 106 S.E.2d 799. Central's trainman, Jones, was an invitee upon the property. The duty owed to him was to keep the permises safe. Knudsen v. Duffee-Freeman, Inc., 99 Ga.App. 520, 109 S.E.2d 339. The court has found a breach of this duty as negligence and a proximate cause of the injury to Jones. That finding has our approval.
 
 
 8
 The indemnity agreement is valid and enforceable. Bohannon v. Southern Railway Co., 97 Ga.App. 849, 104 S.Ed.2d 603. For its negligence, concurrent with that of Central, in causing the injruies to Jones, judgment against Colonial pursuant to the terms of the agreement was not error.
 
 
 9
 Central, on its appeal, urges the single proposition that the injury to Jones was caused by, and only by, the negligence of Colonial without any causation resulting from any act or omission of Central. It is not necessary that we consider whether, under the doctrine of collateral estoppel, Central is concluded on the issue of its negligence by the judgment against it of Jones, 42 C.J.S. , ndemnity 32 b, p. 619. The record amply justifies the finding of the district court.
 
 The judgment of the district court is
 
 10
 Affirmed.
 
 
 
 [1]
 '6. The said platform of the defendant was of concrete construction and substantially level, and at the point where the said switchman Jones alighted, there were present vegetable leaves, crushed ice, or water, the presence of which caused the said Jones' feet to slip in the manner related
 '7. At the time of the plaintiff's switching operation on said date, no unloading or loading operations were being carried on by the defendant at said produce platform, and none had been engaged in by the defendant since the previous midnight.
 '8. The condition of the platform of the defendant at the point where the switchman Jones alighted was such as to put a reasonable man, with knowledge of such condition, on notice that it would likely cause one in the position of switchman Jones alighting at such spot from a string of moving boxcars, to slip and fall. An inspection of the defendant's said platform by the defendant company would have disclosed the unsafe condition of the platform at the spot where the switchman Jones alighted, but there is no evidence that such inspection was made by the defendant.
 '9. Before the switching crew of the plaintiff brought the loaded cars onto the siding of the defendant for placement at its loading and unloading platform on the day when Jones slipped and fell, plaintiff's conductor in charge of the train and crew mounted the platform at its west end from which the switching operation would commence and walked the full length of said platform to the east end for the purpose of determining that the cars to be removed from the track were empty and that everything was clear. In walking the length of the platform, he did inspect the same, and did not observe any condition thereon at the spot where the said switchman alighted, or elsewhere, that would, in his judgment, make the platform unsafe for the use of the plaintiff's switching crew.
 '10. Plaintiff's conductor permitted the switching crew under his direction to proceed with the loaded boxcars onto the defendant's sidetrack for placement thereon at the loading platform, and he did not notify or warn the switchman Jones or any other member of the crew, of any condition of the track or platform which would make such switching operation unsafe or dangerous to any member of the crew.'