27423. SINCLAIR REFINING COMPANY *v.* REID.

DECIDED MAY 17, 1939.

*Clifton W. Brannon, Walter W. Matthews, D. B. Howe,* for plaintiff in error.

*Edwards & Edwards,* contra.

FELTON, J. This action was brought by G. W. Reid against the

Sinclair Refining Company, for damages consisting of gasoline leakage and damage to realty, alleged to have been sustained by Reid because of the negligent installation of a certain gasoline pump and negligent removal of a sign from the building of Reid. On the trial the jury returned a verdict for Reid, and to the overruling of a motion for new trial the company excepted. Counsel concede that this case is controlled by the construction of the contract involved, the pertinent provisions of which are hereinafter set forth. The contentions of the plaintiff in error are: (1) That the provisions in the contract relieving the company from all liability for any loss or damage, etc., whether caused by the negligence of the company or not, preclude a recovery by the defendant in error, and that the general grounds of the motion for new trial should have been sustained; (2) that the court erred in charging the jury that Reid would be entitled to recover if the company damaged his roof in removing its sign, because of the contract provision that the company would be relieved of all liability for damages sustained by Reid in the removal by the company of their equipment; (3) that the court erred in charging the jury that after notice of the leakage the company was under a duty to repair the gasoline pump. The contentions of the defendant in error are: (1) That the contract is contradictory in its terms, especially as to paragraphs 1 and 13, and to that extent ambiguous as to the true intention of the parties; (2) that the contract is against public policy, in that it seeks to hold the company harmless for any damage caused by the *gross* negligence of the company; (3) that there is no consideration for the contract.

In order that the true intention of the contracting parties may be arrived at, we must construe the contract as a whole, and not select separate paragraphs thereof for construction. The contract is one known as an "Equipment Rental Agreement." After naming the parties the contract recites that "in consideration of the sum of $1, . . and in consideration of the mutuality hereof and of the rentals provided herein, . . Sinclair hires and rents to customer and agrees to deliver to customer's place of business such equipment as Sinclair may from time to time deem necessary for the economical and convenient handling, storing, dispensing, advertising, . . and customer agrees to pay Sinclair as rental for such equipment . . $1 per annum, payable in advance. . .

Sinclair shall have the right to substitute for any equipment placed with the customer other equipment of like character and quantity, and in the event of such substitution this agreement . . shall apply to such substituted equipment. . . That any equipment heretofore or hereafter delivered by Sinclair to customer, whether or not evidenced by said receipt, shall be subject to the terms and conditions of this agreement. It is understood and agreed that customer's acts of accepting such equipment . . shall be construed to be an acknowledgment by customer that the equipment . . was in good and serviceable condition at the time of its delivery. . . Such equipment shall at all times be and remain the property of Sinclair. . . *Customer hereby agrees that it will, unless specifically exempted by Sinclair in writing from so doing, maintain such equipment in good condition and repair, and pay all cost and expense in connection therewith.* . . In the event customer should at any time . . cease to purchase gasoline from Sinclair, . . Sinclair shall have the right to declare this agreement terminated, and, without notice to customer, may with men, vehicles, and necessary tools enter the premises whereon such equipment or any part thereof may be located, and remove the same therefrom, whether affixed to the premises or located in, on, or under the same, or not, . . without liability for damages resulting from so doing. . . Upon the termination of this agreement . . Sinclair shall have the right and privilege of removing such equipment . . from the . . premises. . . [13] Customer, for itself, its heirs, . . hereby releases, relinquishes, and discharges, and agrees to indemnify, protect, and save harmless, Sinclair, its successors, . . of and from any and all claims, demands, and liability for any loss, damage, injury, or other casualty to property (whether it be that of either of the parties hereto or of third persons), and to persons (whether they be third persons, customer, or employees of either of the parties hereto), by reason of any leakage, fire, or explosion of or from any such equipment or any part thereof, or of any gasoline, oils, or other products in or about or contained in the same, or by reason of any defect in the construction or installation of such equipment, or by reason of the use or operation of such equipment, or by reason of the placing, erection, falling, or dislocation of such equipment or any part thereof, or by reason of any other casualty, whether due to the negligence of Sinclair or otherwise."

Viewing this contract as a whole, we are unable to see that there is any ambiguity, as contended by defendant in error. As we see it, the contract is simply a lease agreement, the purpose of which is to facilitate and promote the sale of Sinclair products, the accomplishment of which purposes would enure to the benefit of both contracting parties. Nor do we think the fact that Sinclair could, at its option, substitute other equipment gives rise to an ambiguity. According to the terms of the contract the customer or lessee was under a duty to maintain at his own expense the equipment placed there by Sinclair. The contract applies to equipment placed before the execution of the contract, as well as to that placed subsequently. The provision for replacement of equipment is in the contract because Sinclair contemplated that because of its superior knowledge and experience in the business it would know best when and what equipment was needed. In the installation of such equipment Sinclair became the agent of the lessee. Paragraph 13 of the lease agreement, rather than creating an ambiguity, merely sought to limit the liability of Sinclair for any loss occasioned by any defect in the equipment or the installation of the equipment by it. There was a good and valid consideration for the contract. The consideration expressed in the contract was $1, receipt of which was acknowledged, $1 per year rental payable in advance, and the mutuality of the agreement, any one of which is sufficient to support the contract. Code, §§ 20-303, 20-304. It is contended by the defendant in error that there is no consideration for the provision in paragraph 13 of the agreement releasing Sinclair from liability. The contract is supported by consideration, and it follows that its component provisions are supported by the same consideration.

The contention that the provision exempting Sinclair from liability was void as against public policy gave rise to some doubt in our minds as to its validity. The exemption sought to be provided was injury to person or property of either the defendant in error or third persons. This action is for damage to the property of the defendant in error, and the rights of third persons are not involved. Conceding, though not deciding, that the release from liability, as to strangers to the contract, for damages caused by the negligence of Sinclair, is void as against public policy, the contract being severable, it does not follow that the defendant in error could

not relieve the company from liability for injuries sustained by him. "If the contract be severable, that which is legal will not be annulled by that which is illegal." Code, § 20-501.

In the absence of a contract to the contrary, the lessor is liable for injuries caused by faulty equipment or the installation thereof, after notice, in the same manner that a landlord is liable to a tenant for injuries caused by defective premises, the liability arising after notice. It has been held by this court, however, that this liability can be contracted against. *King* v. *Smith*, 47 *Ga. App.* 360 (170 S. E. 546). In the instant case the defendant in error agreed that the acceptance of the equipment was an acknowledgment that it was in good condition when received, and agreed to maintain at his own expense the equipment delivered by Sinclair; and no duty arose whereby Sinclair became liable for injuries sustained because of the negligent installation of the equipment. In the absence of a duty to repair, notice of defects becomes immaterial. While we have been unable to find a case in Georgia construing the provisions of this contract, we think the *King* case, supra, is authority for the proposition that the defendant in error could by contract relieve the plaintiff in error from damage arising by reason of its negligence, unless the injuries were wilfully or wantonly inflicted. In the case at bar there are no allegations nor is there any evidence tending to show wilfulness or wantonness on the part of Sinclair. The *King* case is also authority for the proposition that where the company had the privilege of going on the premises to substitute or repair equipment, the fact that it did attempt to repair the equipment would not render it liable for injuries sustained by reason of the faulty repairs. See Standard Oil Co. *v.* Stevens, 103 Vt. 1 (151 Atl. 507); Eastin *v.* Phillips Petroleum Co. (Mo. App.), 57 S. W. (2d) 547. The evidence demanded a verdict for the plaintiff in error; and under the terms of the contract the court erred in charging the jury that there was a liability on the Sinclair Company after notice of the defect, and that there was a liability on the part of the company for the negligent removal of the sign from the building. The court erred in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*