DECIDED JANUARY 28, 1953.

*Edward F. Taylor,* for plaintiff in error.

*Miller, Miller & Miller,* contra.

WORRILL, J.  Frank Brady sued H. C. Glosson in the Superior Court of Bibb County for damages.  The second count of the petition, as amended, alleged substantially the following facts: The plaintiff rented from the defendant a store building and filling station in Macon and was occupying the rented premises in the operation of a business selling groceries, other merchandise and gasoline and oil prior to October 22, 1951.  About a year prior to that date the defendant purchased a building some twenty years old or more which he moved and placed on his property about three or four feet away from the building occupied by the plaintiff.  The defendant prior to the date first mentioned was in the process of remodeling the said old building and was converting it into a barber shop.  The petition further alleged:

"7.  Said old building had been wired for electricity many years ago and the wiring in said building was old and worn and dangerous which fact was well known to the defendant.

"8.  Petitioner shows that prior to defendant's attempt to run any electricity into and through the old building the defendant told him what he was going to do and petitioner warned him the old wiring in the building was dangerous and no current should be run through it, and would probably set the building afire.  .  .

"10.  Petitioner shows that the defendant agreed to place new wiring in the old building before running electric current through the same, but failed and refused to do so, knowing at the time it was dangerous and liable to set the building afire.

"11.  Two or three days prior to October 22, 1951, the defendant had been trying to get electric current to run through

the old building but had been unsuccessful until he ran a line of wire from defendant's home on Burton Avenue, to the old store building and connected it with some loose wires which were dangling from the old building.

"12. On Sunday morning, October 21, 1951, your petitioner discovered the wire running from defendant's home to the old building and warned defendant said extension of wire was dangerous. The wire was connected by receptacles or boxes in several places, and which were lying on the wet or moist earth or ground. When petitioner warned defendant the wire was dangerous and liable to cause fire in the old building, the defendant picked up one of the receptacles or boxes which connected the several pieces of wire running to the building and the defendant was severely shocked by the electricity running through the wire and receptacles.

"13. The defendant threw the receptacle to the ground and knew he had been shocked by the electricity and immediately agreed to remove the wire which was running from his home to the old store building.

"14. Notwithstanding this agreement the defendant failed and refused to disconnect said wire from his home to the old store building.

"15. The old building was wired with old, worn and dangerous wires in the attic of the building which were connected with light fixtures on the ceiling of the building, said wiring running along the ceiling joists and ceiling of the building.

"16. The wire from the home to the old store building was being made wet and moist by a light rain falling, and the grounding of the wires and receptacles with the earth or soil, and with the wooden structure in the old building was causing the wire to become very hot and dangerous, all of which was well known to the defendant.

"17. About 2 a. m. on or about Oct. 22, 1951, the old dilapidated worn and defective wiring in the building became so hot it set the old building afire and caused the building to be destroyed by fire. This fire spread from the old building owned by the defendant, to the other building of the defendant which was occupied by the petitioner as a store building, completely destroying both buildings and the contents of the building which your petitioner occupied as a store building."

By amendment the plaintiff alleged that he occupied the premises as a tenant of the defendant under a certain written lease agreement, a copy of which was attached as an exhibit to the defendant's .answer. The copy of that agreement, included as a part of such answer, shows that the plaintiff held the premises, which were destroyed by fire as alleged, for a term of five years from December 16, 1948. The agreement provided, among other things, that, "Lessee hereby releases said lessor from any and all damages to both person and property during the term of this contract." The petition set forth a list of the plaintiff's property which was alleged to be in the building rented by him and which was destroyed by the fire.

The first count of the petition was based on simple negligence on the part of the defendant in causing or permitting the fire to consume the plaintiff's property. The trial court sustained a general demurrer to both counts of the petition as amended, overruled all special demurrers, and dismissed the petition. The exception here is to so much of the order of the trial court as sustained the general demurrers.

The plaintiff in error concedes that the paragraph of the rent contract quoted relieved the defendant from liability to the plaintiff for any injury or damage received by the plaintiff resulting solely from simple negligence on the part of the defendant, and the sole question argued before this court is whether count two of the petition, as set forth in extenso above, contained sufficient allegations of fact to authorize submission to a jury of the question of wilfulness and wantonness of the defendant.

Provisions in rent and carriage contracts relieving the landlord or the carrier from liability for damages resulting from simple negligence on the part of such landlord or carrier have been upheld in Georgia as a legitimate matter for private contract and as not contravening the public policy of this State. *King* v. *Smith*, 47 *Ga. App.* 360, 364 (2) (170 S. E. 546), and numerous cases therein cited. That case is authority for the further proposition that such a provision does not, however, relieve the landlord or carrier from liability for wanton and wilful conduct. See also *Sinclair Refining Co.* v. *Reid*, 60 *Ga. App.* 119, 122 (3 S. E. 2d, 121).

"Ordinarily, issues relating to negligence, . . are questions which lie peculiarly within the province of the jury to determine. As a general rule, not only is it incumbent upon the jury to say whether the particular conduct charged against the defendant is proved, but, except as to allegations relating to negligence per se, it is their further duty to determine whether or not such acts, if proved, were negligent; and if so, it then becomes their final duty to solve any issue made as to whether or not such proved acts of negligence on the part of the defendant constituted the proximate cause of the injury. While it is true that where a petition indisputably shows on its face that the plaintiff is not entitled to recover, and the question is made by general demurrer, it is the duty of the court to dismiss the action, still the application of this rule cannot properly be invoked except in cases so plain as will in no wise admit of a reasonable contrary interpretation." *Central of Georgia Ry. Co.* v. *Hartley,* 25 *Ga. App.* 110(1) (103 S. E. 259). See also, to the same effect, *Western Union Telegraph Co.* v. *Spencer,* 24 *Ga. App.* 471(1) (101 S. E. 198); *Bass* v. *Southern Enterprises,* 32 *Ga. App.* 399(2) (123 S. E. 753); *Southern Ry. Co.* v. *Blanton,* 56 *Ga. App.* 232, 240 (192 S. E. 437); *DeGolian* v. *Faulkner,* 74 *Ga. App.* 866, 869 (41 S. E. 2d, 661). The foregoing rule is but a specific application of the broader general principle that questions of fact are to be tried by the jury, and the expressions therein, while directed specifically to questions of negligence and diligence, nevertheless apply with equal force to questions of wantonness and wilfulness; and, unless the allegations of the petition make it plain that the conduct of the defendant, as alleged, does not amount to wantonness and wilfulness, a general demurrer to the petition should be overruled, and the question of whether such alleged facts constitute such conduct left to the jury under proper instructions from the court. See *Elrod* v. *Anchor Duck Mills,* 50 *Ga. App.* 531, 535 (179 S. E. 188).

"Although there is a clear distinction between negligence and wilfulness, yet a reckless and wanton disregard of consequences, evincing a willingness to inflict injury, may amount to wilfulness, although there is no direct proof of actual intention to inflict the injury complained of." *Southern Ry. Co.* v. *Chat-*

*man,* 124 *Ga.* 1026, 1031 (53 S. E. 692). In *Peavy* v. *Peavy,* 36 *Ga. App.* 202, 205 (136 S. E. 96), it is indicated that, in Georgia at least, wanton and wilful conduct involves a greater degree of culpability than does mere gross negligence. However, in *Frye* v. *Pyron,* 51 *Ga. App.* 613(3) (181 S. E. 142), it was said: "Gross negligence and wilful and wanton negligence are equivalent when the allegations of fact set up in the petition show 'that entire absence of care which would raise the presumption of conscious indifference,' or that 'with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury' "; and in *Reid* v. *Sinclair Refining Co.,* 62 *Ga. App.* 198, 201, (8 S. E. 2d, 527), it was said: " 'To make an act wilful or wanton specific facts must be alleged and proved. *Dowman-Dozier Mfg. Co.* v. *Central Ry. Co.,* supra [29 *Ga. App.* 187 (114 S. E. 815)]. The conduct of the defendant must be "such as to evince a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent." . .' *King* v. *Smith,* 47 *Ga. App.* 360, 366 (170 S. E. 546)."

Under the foregoing authorities, the allegations of the instant petition, as above set forth, were sufficient to carry the case to the jury on the question of whether or not the facts pleaded constituted wanton and wilful conduct on the part of the defendant, or whether the alleged acts or omissions of the defendant, if not wilful in themselves, were sufficient to authorize the jury to find, if they were sustained by proof, that the plaintiff's acts or omissions in connecting the old, worn-out and unsafe wiring in the old building to the energized line running from his home to the old building, and in permitting the same to remain connected after being advised by the plaintiff of the dangerous condition created thereby and after he had been shocked and knew that the wires were shorted out and were likely to overheat, were so reckless or so charged with indifference to the consequences as to evince a wantonness equivalent in spirit to actual intent within the rule announced. It follows that the trial court erred in sustaining the general demurrer to the second count of the petition, and in dismissing the same.

*Judgment reversed. Sutton, C.J., and Felton, J., concur.*