### 37200. BOHANNON *v.* SOUTHERN RAILWAY COMPANY *et al.*

Decided June 23, 1958—Rehearing denied July 8, 1958.

*Hamilton Napier, D. Dudley Smith,* for plaintiff in error.
*Harris, Russell, Weaver & Watkins,* contra.

TOWNSEND, Judge. 1. In *Copeland* v. *Beville,* 93 *Ga. App.* 442 (92 S. E. 2d 54) "indemnity" is defined as "the obligation or duty resting on one person to make good any loss or damage another has incurred or may incur by acting at his request or for his benefit." There is a marked distinction between "a covenant . . . releasing lessor from and agreeing not to sue him on claims accruing to lessee, and covenants . . . agreeing to indemnify lessor and hold him harmless from claims of others." Martin *v.* American Optical Co., 184 Fed. 2d 528. This case quotes the following language from Employers Casualty Co. *v.* Howard P. Foley Co., Inc., 158 Fed. 2d 363: "It is certainly the general rule that, where the indemnity is not contracted for from an insurance company whose business it is to furnish indemnity for a premium and where indemnity is the principal purpose of the contract; but from one not in the indemnity business and as an incident of a contract whose main purpose is something else . . . the indemnity provision is construed strictly in favor of the indemnitor." The general rule is that an

indemnity agreement which purports to indemnify against one's own negligence will not be so construed unless such obligation is expressed in unequivocal terms. See *Fisk Tire Co.* v. *Hood Coach Lines*, 54 *Ga. App.* 401 (188 S. E. 57); Halliburton Oil Well Cementing Co. *v.* Paulk, 180 Fed. 2d 79; Standard Oil Co. of Texas *v.* Wampler, 218 Fed. 2d 768; Buffa *v.* General Motors Corp., 131 Fed. Supp. 478; Ruddy *v.* New York Central Railroad Co., 124 Fed. Supp. 470; Foster *v.* Pa. R. Co., 104 Fed. Supp. 491; McCormick *v.* U.S., 134 Fed. Supp. 243. Nevertheless, a railroad company has a privilege in granting to another a right not owing by it to the public generally to make use of a part of its right-of-way, to limit its liability in such way as the contracting parties may see fit. See 175 A.L.R. (Ann.) pp. 8, 94. It was pointed out in Aetna Casualty & Surety Co. *v.* Bros., 226 Minn. 466 (33 N.W. 2d 46), that a contract of indemnity may in the same instrument make provision for loss or damage and also for indemnity against liability to third persons, and there seems no reason why the same clause may not provide simultaneously for indemnity against property loss or damage to the lessor; indemnity against liability to third parties resulting from injury due in part or wholly to negligence of the lessor, and an exemption from liability for injury, loss or damage to the lessee caused by the lessor.

Applying the above rules of law which this court considers sound and relevant to the facts of this case, it remains only to examine the indemnity clause in the contract between the plaintiff licensee sawmill company and the defendant railroad company to determine whether, construed against the indemnitee as it must be, it exempts the railroad from liability resulting solely from its own negligence in regard to the property of the indemnitor. This provision reads as follows: "Inasmuch as the use by the licensee of property of the railway company in exercise of privileges herein granted may create risks of fire or other loss, injury or damage which would not accrue except for such use, and the railway company would not grant said privileges except upon the condition that it shall be protected against any risk so created, the licensee, in consideration of said privileges, covenants hereby to protect and indemnify the rail-

way company and save it wholly harmless from the consequences of any property loss or damage, death or personal injury whatever, accruing or suffered or sustained from or by reason of any act, negligence or default of the licensee, his agents, servants or employees, in or about or in connection with the exercise of the privileges herein granted, or which may in any manner or to any extent be attributable thereto or to the presence of said building of the licensee, or contents thereof, or lumber or any other property of the licensee on said premises of the railway company, and whether or not negligence on the part of the railway company, its servants or employees, may have contributed to the loss, injury or damage, except that the licensee shall not be held responsible for any loss of life or personal injury, or damage to cars or property of the railway company, accruing from its own negligence, without fault of the licensee, his servants or employees." The only judicial construction of this exact provision which we have been able to find is in Southern Ry. Co. *v.* Coca-Cola Bottling Co., 145 Fed. 2d 304, a case differing markedly on its facts because it involved the claim of a third party, an employee of the railroad, who, while engaged in uncoupling a car, struck his body against a building of the licensee Coca-Cola Bottling Company and was flung under the train. An interesting construction of this provision as given in that case is as follows: "In the principal clause the Coca Cola Company undertakes to indemnify the Railroad Company for the consequences of any loss *occasioned by the presence of the building* even though the negligence of the railroad may have contributed to the loss. The excepting clause ['except that the Licensee shall not be held responsible for any loss of life or personal injury, or damage to cars or property of the Railway Company, accruing from its own negligence, without fault of the Licensee, its servants or employees'] exempts the Coca Cola Company from liability where the loss is due to the negligence of the Railroad Company and the Coca Cola Company is without fault. This means that *if a loss is due to the presence of the building* and neither party is at fault, the Coca Cola Company is liable; if both are at fault, the Coca Cola Company is still liable; but, if the Railroad Company is negligent and the Coca

Cola Company is without fault, the Coca Cola Company is not liable. . . Fault within the meaning of a contract cannot be predicated upon doing precisely what the contract provides shall be done." (Italics ours.) Insofar as it is applicable, this construction of the indemnity provision appears to this court to be entirely sound. It is relevant in two ways—first, as deciding that the *location of the indemnitor's buildings* cannot be considered as the basis of negligence where it is in accordance with the contract; and, secondly, its obvious construction of the contract words "loss . . . attributable . . . to the presence of said building" as meaning "loss due to or occasioned by the presence of the building." A loss *of* a building by fire due to outside causes, is not a loss *attributable to, due to,* or *occasioned by* the building itself. It is a loss attributable to negligence in operating the trains which affects the building as a result rather than emanating from it as a cause. This construction of the principal clause of the indemnity provision is all the more obvious when read in context. The provision first recites that use of the premises by the indemnitor may create risks of fire against which the railroad wishes to be protected. The indemnitor then covenants to save harmless the railway from loss, damage or injury accruing or sustained by the negligence of the indemnitor, its agents and employees, and next to save it harmless from any such loss or damage attributable to (i.e., occasioned by) such negligence, or the presence of the building, or the presence of the contents thereof, and as to all of these things the fact that the railroad may have been contributorily negligent shall not be a defense. The effect of the principal clause, as held in Southern Ry. Co. *v.* Coca Cola Bottling Co., 145 Fed. 2d 304, supra, is simply to erase contributory negligence by the indemnitee railroad as a defense to an action by it against the indemnitor plaintiff. It simply does not deal with the subject matter of this lawsuit, which is an action by the sawmill company against the railroad for loss resulting solely from the negligence of the railroad.

A similar case is to be found in Kansas City Southern Ry. Co. *v.* New England Fire Ins. Co., 133 Fed. 2d 973, where the lessee sued the railroad for fire loss to its property on the de-

fendant's right-of-way caused by the defendant's negligence. The indemnity clause there read as follows: "The Lessee agrees to indemnify the Railway Company and save it harmless from any and all claims and expenses that may arise or may be made for death, injury, loss or damage resulting to the Railway Company's employees or property, *or to other persons or their property* by reason or in consequence of the occupancy or use of said premises by the lessee." (Italics ours.) It was contended that the italicized words included the lessee itself so as to preclude it from suing the railroad. In deciding against this contention the decision states: "In the indemnity agreement here lessees agree to save the railway company harmless from all claims against the railway company that may arise for injury or damage resulting to the railway company's employees or property, or to other persons or their property, in consequence of the occupancy of the leased premises by the lessees. The loss or damage here was not to the property of the railway company or to that of any other person, but to the property of the lessees. If it was the intention of the railway company to protect itself from loss or damage to the property of lessees by reason of the operation of the railroad, we think it would have so provided. . . . Moreover, we think it cannot be said that the loss in this case was caused by the occupancy of the premises by the lessees. On the other hand, the loss was caused by the acts of appellant's employees engaged in the operation of the railroad." In like manner, the loss here was not caused by the existence of use of the plaintiff's buildings, but by the defendant's negligence. Had the defendant wished to protect itself against its own negligence in such a case, it should have spelled out the exemption clearly and unequivocally in the contract.

None of the cases cited by the defendant in error support a contrary view. In *Blitch v. Central of Ga. Ry. Co.*, 122 *Ga.* 711 (50 S. E. 945) and *Dowman-Dozier Mfg. Co. v. Central of Ga. Ry. Co.*, 29 *Ga. App.* 187 (114 S. E. 815), the lessee specifically agreed to hold harmless the railroad from all damage that might arise from the destruction of any building by fire, whether due to the negligence of railroad employees or not. *Hearn v. Central of Ga. Ry. Co.*, 22 *Ga. App.* 1 (95 S. E. 368) contains a

substantially identical clause. In each of these cases the lessee waived its right of action for fire damage to its property, whether caused by the railroad's negligence or not. So far as the petition shows, the agreement here contains no such provision.

In *Davis* v. *Gossett & Sons,* 30 *Ga. App.* 576, 578 (118 S. E. 773) the agreement recites that "the tenant shall indemnify, save and hold harmless the railway company . . from . . . all loss . . . liability, or expense that may accrue to or against it by reason of the destruction of . . . any buildings, improvements or any personal property belonging to the tenant . . . by fire or from any other cause whatsoever." *Louisville & Nashville R. Co.* v. *Atlantic Co.,* 66 *Ga. App.* 791 (19 S. E. 2d 364) is not in point as it concerned an agreement to indemnify the railroad against the claims of third parties who might be injured on the premises. The rationale of all these cases is that when the party seeking to indemnify itself or absolve itself from the consequences of its own negligence does so in unequivocal terms, the contract terms will be given effect, but no such result will be read into the contract by implication.

The petition sets out a cause of action, and the trial court erred in sustaining the general demurrers and dismissing the petition.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*