## 39038. ROME BUILDERS SUPPLY, INC. v. ROME KRAFT COMPANY.

TOWNSEND, Presiding Judge. 1. Rulings on pleadings must be the subject of direct exception and cannot be considered as special grounds of a motion for a new trial. *Bennett v. Patten,* 148 Ga. 66 (3a) (95 SE 690); *Redwine Bros. v. Street,* 18 Ga. App. 77 (1) (89 SE 163). The first special ground of the motion for a new trial cannot be considered by this court.

2. Where a special ground of a motion for a new trial complains of the exclusion of evidence on objection to a question asked on direct examination, but fails to state the answer expected or show its relevancy to the movant's case, it is too incomplete for consideration by this court. *Bowden v. Bowden,* 125 Ga. 107 (1) (53 SE 605). Special grounds 2 and 3 are subject to the objection urged against them.

3. Contracts indemnifying one against the consequences of his

own negligence are not favored, but will be given effect where the intent is expressed in plain and unequivocal terms. *Bohannon v. Southern Ry. Co.,* 97 Ga. App. 849 (104 SE2d 603). A provision in a contract by which the plaintiff in this case agreed that "in all of its operations hereunder" it would hold the defendant "free from any claim and/or liability of any kind or character in connection therewith" is a waiver by the plaintiff of its right to sue the defendant for the defendant's negligence in connection with any of the operations of the plaintiff under the contract, but does not extend to negligence of the defendant not connected with an operation of the plaintiff.

4. The plaintiff further agreed under the contract to deliver substantially all pine chips manufactured by it to the defendant and "agrees to so deliver all such pine chips, by trailer trucks with the regularity of the normal production of such chips, into the receiving docks of said second party at its plant at Krannert, Georgia." The defendant filed a special plea in bar alleging that by reason of the indemnity clause of the contract defendant was discharged from any liability in connection with the damage to plaintiff's trailer sued for and which damage the petition showed to have resulted during the delivery of chips to the defendant. This issue was by agreement separately tried before a jury, and a verdict was directed in favor of the defendant, which ruling is assigned as error in the amendment to the motion for a new trial.

Since it appears from the contract terms that the plaintiff's operation ended when its chips were delivered *into the receiving docks,* the question at issue was whether such delivery had been made when the damage occurred. The evidence shows that the plaintiff delivered the chips by tractor-trailer and at the defendant's plant they were transferred to a hopper and conveyor belt and moved into the processing system. The only evidence from which it might be determined what the "receiving docks" referred to in the contract meant, delivery into which constituted the end of the plaintiff's operations, was supplied by the defendant as follows: "The loading dock consists of a frame similar to a gantry. It is a steel frame and it comes up and has an overhead, and along that it has a monorail that an electric motor travels along; and a cable comes down from this monorail with a hook on it, and

this hook serves the purpose of hooking the front end of the trailer. And then the pit—also consists of a pit that when the trailer is elevated that these chips dump out of the trailer into this pit. . . There is a little place for a bar that's hooked up under the trailer to fit in, and as the trailer is backed in, this bar catches in these catches that are sort of a hook affair, and this bar catches in, and as the trailer is picked up the front end that pivots the trailer in such a manner as to dump the chips out of the trailer at a 60 degree angle roughly. The pit into which the chips are poured is sort of a hopper. The chips go directly from the truck or trailer into the hopper or pit. That is the point at which we take delivery of the chips. . . *There is no other receiving dock* other than the one I have described. . . Getting back to the receiving dock, looking at it from the front there are two steel beams possibly 30 feet in height. . . It runs up and down this monorail and this has an electric motor and hoist and cable that comes down here with a hook. . . It hooks in here, and after the trailer is backed in there they hook on to it to the cable that lifts it up and as it is lifted up there is a bar right in the back attached to the back of the trailer that this pivots on, and as this thing picks it up the motor hoists travel along this monorail and pick up the front end of the trailer, and it pivots out at the back. . . This is where the operator stands, the man who lifts the trailer up. The driver has nothing to do with the way that thing is lifted. The operator is in control. . . *A delivery into the receiving dock would be delivery into this apparatus.* We consider delivery into the dock delivery into the pit. When the contract says that the first party agrees to deliver such pine chips into the receiving dock, that means it would be into this pit or hopper, not necessarily in that apparatus. He could come back out. The pit or hopper is considered the receiving dock because he could come in and pull out and not deliver his chips." (Emphasis added).

The defendant had the burden of establishing his special plea, and failed to show that the operator in charge of hoisting the trailer was the plaintiff's agent. The petition alleged that such operator was the defendant's agent and the apparatus was on the defendant's premises. If the words "delivery into the receiving docks of the second party" meant that the plain-

tiff had to transfer the chips from the trailer to the hopper, the defendant of course was entitled to prevail, but if the receiving docks were, as the defendant's agent testified, the hoisting apparatus together with the pit or hopper, and control of the equipment was taken over by defendant's agent to the exclusion of plaintiff's driver, as the evidence showed, at the point where the hoisting apparatus was hooked on to lift the trailer so that the chips could slide out into the hopper, then the point where the defendant took possession for that purpose was a delivery into the receiving dock, and the plaintiff performed no further operation thereafter. While the witness said he considered that delivery into the dock meant delivery into the pit, he also twice testified that the lifting apparatus was a part of the dock, and he showed no further control or operation by the plaintiff after this point was reached. His testimony was therefore equivocal and self-contradictory. Such testimony by the corporate defendant's agent, the wood procurement supervisor, should be construed as the testimony of the defendant and "he is not entitled to a finding in his favor, if that version of his testimony the most unfavorable to him shows that the verdict should be against him." *Southern Ry. Co. v. Hobbs*, 121 Ga. 428 (49 SE 294); *Steele v. Central of Ga. Ry. Co.*, 123 Ga. 237 (1) (51 SE 438). Since the testimony here would have authorized a finding that the plaintiff had delivered the chips into the receiving dock and thus ended its operations under the contract at the time the damage occurred it was error to direct a verdict in favor of the defendant.

The trial court erred in overruling the motion for a new trial.

*Judgment reversed. Frankum and Jordan, JJ., concur.*

DECIDED SEPTEMBER 28, 1961.

*Covington, Kilpatrick & Storey, J. S. Kilpatrick,* for plaintiff in error.

*Matthews, Maddox, Walton & Smith, John W. Maddox,* contra.