39419, 39420. INSURANCE COMPANY OF NORTH AMERICA v. GULF OIL CORPORATION; and vice versa.

Decided June 22, 1962—Rehearing denied July 26, 1962.

384

*Roberts & Thornton, Clyde L. Armour, Jr., L. B. Kent, Jack M. Thornton,* for plaintiff in error.

*Kelly, Champion & Henson, S. E. Kelly, Jr., Forest L. Champion, Jr.,* contra.

HALL, Judge. █ By its first defense Gulf contended that the plaintiff could not become subrogated to any claim against it because it was an insured under the policy by virtue of the loss payable clause, which was included in the policy in accordance with an agreement requiring that Harper carry insurance acceptable to Gulf, and under which plaintiff paid the proceeds of the policy to J. B. Harper, Jr. and Gulf.

The policy shows that it was "issued to J. B. Harper, Jr. d/b/a Harper Tire & Supply Company." It provides: It is hereby understood and agreed that loss, if any, hereunder shall be payable to the insured and Gulf Oil Corporation, 131 Ponce de Leon Avenue, N. E., Atlanta, Georgia, as their respective interests may appear."

The above is an "open" mortgage or loss payable clause. *Southern States Fire &c. Ins. Co. v. Napier,* 22 Ga. App. 361 (96 SE 15). It makes the mortgagee merely "an appointee to collect the insurance money due to the insured in case of loss; and the mortgagee must claim in the right of the insured, and not in his own." *Northwestern Nat. Ins. Co. v. Southern States Phosphate &c. Co.,* 20 Ga. App. 506 (93 SE 157); *Hartford Fire Ins. Co. v. Liddell Co.,* 130 Ga. 8, 12, 13, 14 (60 SE 104); 5 Couch on Insurance (2d Ed.), 350, § 29.65. A clause which makes

loss payable to the mortagee as his interest may appear does not insure the mortgagee's interest in the property, "but the interest which he has in the indebtedness." 5 Appleman, Insurance Law and Practice, 556, § 3401. Under a New York, standard, or union mortgage clause, on the other hand, it is considered that the insurer has entered into a separate contract with the mortgagee, and the mortgagee cannot be affected by any act or default of the mortgagor. *Mechanics Ins. Co. v. Goodwin,* 48 Ga. App. 823, 826 (174 SE 160); *Northwestern Fire &c. Ins. Co. v. Waycross Bldg. & Loan Assn.,* 51 Ga. App. 857, 859-860 (181 SE 509; 5 Appleman, 557, 559, § 3401; 124 ALR 1034. There is, therefore, an important distinction between the "standard" form and the "open" loss payable clause, in that the latter does not "operate as a separate contract between the mortgagee and the company; but the policy remains one between the company and the owner, with a right of collection vested in the mortgagee by appointment." 5 Appleman, op. cit. 552, 556, § 3401; 29 Am. Jur. 986, § 728 et seq.

The mere fact that the insured and Gulf were protected "as their respective interests may appear," does not change the nature of the present loss payable clause. Harper was designated in the policy as the insured and the fact that the loss payable clause refers to "the insured" *and* Gulf indicates that Gulf was not an insured.

We have found no decision as to whether an insurer can be subrogated to rights of the insured against a loss payee under an open loss payable clause. In Federal Insurance Co. v. Tamiami Trail Tours, Inc., 117 F2d 794 (5th Cir. 1941), the court stated that the insurer could not be subrogated to the claim of one of the loss payees against another of the three loss payees named in a standard mortgage clause, for the reason that the clause created a separate and independent contractual status between the insurer and the defendant loss payee, making the loss payee an insured under the policy.

The cases cited by the defendant for its argument that Gulf is an insured or a beneficiary under the policy against whom the plaintiff cannot be subrogated are not in point. In Miller v. Kujak, 4 Wis. 2d 80, (90 NW 2d 137), the "insured" against

whom it was held the insurer could not be subrogated was an additional insured under a liability insurance policy by virtue of being the operator of the insured vehicle. Builders & Manufacturers Mut. Cas. Co. v. Preferred Auto Ins. Co., 118 F2d 118 (6th Cir. 1941); American Surety Co. of N. Y. v. Canal Ins. Co., 258 F2d 934 (4th Cir. 1958); and Louisiana Fire Ins. Co. v. Royal Indemnity Co. (La. App.) 38 S2d 807, also involved additional insureds under omnibus clauses of the policies. These decisions, even if they were by Georgia courts, would not be controlling of the present question.

In the shipper-carrier cases it has been held that when a carrier in accepting goods for shipment has stipulated with the shipper to be allowed the benefit of insurance obtained by the shipper, the insurer cannot maintain an action against the carrier for loss of the goods, because as subrogee the insurer has no greater rights than the shipper had to maintain an action inconsistent with the terms of the stipulation. Phoenix Ins. Co. v. Erie & Western Transportation Co., 117 U. S. 312, 325 (6 SC 750, 29 LE 873); Home Ins. Co. of N .Y. v. Northern Pacific R. Co., 18 Wash. 2d 798 (140 P2d 507, 147 ALR 849). These cases are in a special class. See Vance On Insurance 794, § 134. Under the arrangements between the shipper and carrier, the insurance obtained by the owner served in effect as liability insurance for the carrier; it insured against perils to the goods in transit, for which in some cases the carrier would be liable to the shipper. The effect of the loss payable clause in the present case was not to insure against Gulf's liability to the owner of the property, but it served as security to Gulf against Harper's default in payment of his debt to Gulf.

The loss payable clause in the present case did not insure Gulf's interest in the property as mortgagee. Its purpose was to provide security for the indebtedness contracted by the mortgagor, Harper, to Gulf, the mortgagee. 5 Couch on Insurance (2d Ed.) 352, § 29.67. The tort claim of Harper, the insured, against Gulf, which is the basis of the present suit, is not related to the contract creating the insured's debt to Gulf. The satisfaction of the debt by collecting the security afforded by the insurance loss payable provision did not satisfy the claim in tort, any

more than the foreclosure of any other form of security for a contract debt would satisfy a tort claim between the same parties. The fact that the loss payable clause gave Gulf rights in the proceeds of the insurance policy does not preclude the plaintiff being subrogated to J. B. Harper's tort claim against Gulf.

The court did not err in sustaining plaintiff's general and special demurrers to defendant's first defense.

■ The second defense was that Harper was barred from any recovery, and therefore plaintiff as subrogee could not recover, because of the exculpatory clause contained in the lease agreement between Gulf and Harper: "The lessee covenants and agrees that lessee has examined and is familiar with the condition of the *premises herein leased,* and that same is received without warranty by the lessor as to its condition for lessee's intended use. *The lessor shall not be responsible for any defects or changes in the condition of the premises or buildings and improvements situate thereon, and the lessor shall not be responsible for any damage to lessee's property situate on said premises, nor for any injury to or death of any person or persons by reason of any matter or thing,* and the lessee agrees to indemnify and save harmless the lessor of and from all fines, suits, proceedings, demands, claims and actions of any kind or nature of anyone whomsoever arising or growing out of or in any manner connected with occupancy and use of said premises and by reason of any breach, violation or non-performance of the covenants and conditions herein on the part of the lessee." (Emphasis supplied.)

We must decide whether the exculpatory clause released Gulf from liability for the negligence upon which this action is based. There seems to be no question as to the validity of such an exculpatory clause. *King v. Smith,* 47 Ga. App. 360, 364 (170 SE 546) ; 6 Corbin, Contracts 869, § 1472; Restatement, Contracts, § 547; Anno. 175 ALR 88, 89. It seems equally clear that *generally* the purpose of such exculpatory clauses between a lessor and lessee is to relieve the lessor of liability for damages caused by defects in the leased premises. See *Sinclair Refining Co. v. Reid,* 60 Ga. App. 119, 123 (3 SE2d 121) ; 32 Am. Jur. 615, § 739; 175 ALR 88, 89. It is elementary that, in

the absence of an exculpatory agreement, the lessor may become liable for the defective condition of the premises under the law of landlord and tenant. *Whittle v. Webster,* 55 Ga. 180; *Wall Realty Co. v. Leslie,* 54 Ga. App. 560 (188 SE 600).

It is apparent from the wording and context of the clause italicized above that it had the usual purpose. An "exculpatory clause in lease is generally strictly construed, and held limited to causes of action arising out of lessor-lessee relationship. . ." 6 Williston on Contracts (Rev. Ed.), 1961 Supp. 38, § 1751 C; Moss v. Hunding, 27 Ill. App. 2d 189 (169 NE2d 396, 399). In *Brady v. Glosson,* 87 Ga. App. 476, 478 (74 SE2d 253), the only question adjudicated was whether the petition set out a cause of action for wilful and wanton conduct; hence it is not authority to the contrary.

The cases involving indemnity clauses in leases of spur tracks or other premises from railroads are inapplicable because of their peculiar circumstances as well as the subject matter dealt with in the indemnity provisions. *Davis v. Gossett & Sons,* 30 Ga. App. 576 (118 SE 773); *Louisville & Nashville R. Co. v. Atlantic Co.,* 66 Ga. App. 791 (19 SE2d 364).

The negligence upon which the present suit is based was not negligence of Gulf as lessor in performing any duty with respect to the leased premises, but was committed outside the leased premises and had no relationship to the rights and duties created by the lease. Thus, the holding in *King v. Smith,* supra, that the exemption in the lease contract effectively released the landlord from all liability on account of ordinary negligence for the damage to property sued for, is not applicable here. In that case the landlord's alleged negligence causing property damage was in the maintenance of steam pipes—for which the landlord's liability would have arisen because of the lease relationship. By the same reasoning, *Capital Wall Paper Co. v. Callan Court Co.,* 38 Ga. App. 428 (144 SE 135); and *Sinclair Refining Co. v. Reid,* supra, are not applicable. The present exculpatory clause contemplated causes of action arising out of the lease relationship, but did not encompass negligence in other legal duties that would exist in the absence of the lease. Accord, *Rome Builders Supply, Inc. v. Rome Kraft Co.,* 104 Ga. App. 488

(122 SE2d 133). In other words, the subject matter of the exculpatory clause is not the same as the subject matter of this suit.

Without commenting upon whether a clause relieving the defendant of negligence with respect to every legal duty would be valid, at least a clause having such broad consequences could be effective only by unambiguous language clearly expressing the intention of the parties to exculpate from liability for negligence of every kind. 6 Corbin, Contracts 872, § 1472; 175 ALR 88, 89, 92. Accord, *Bohannon v. Southern R. Co.*, 97 Ga. App. 849, 855 (104 SE2d 603); *Rome Builders Supply, Inc. v. Rome Kraft Co.*, supra; Zeller Marine Corp. v. Lehigh Valley R. Co., 74 FSupp. 538; 27 Am. Jur. 464, § 15.

The defendant relies heavily upon the use in this lease of the words "by reason of any manner or thing." If for the sake of argument we accept the defendant's contention and give these words the broadest interpretation, and concede that they go beyond claims arising from the rights and duties created by the lease, still, reasonably construing the sentence in which they appear, they modify only "injury to or death of any person or persons." They do not relate to "damage to lessee's property situate on said premises." We decide nothing in this opinion, however, as to the effect the exculpatory clause would have upon a personal injury claim.

The trial court erred in overruling the plaintiff's general demurrer to the second defense pleaded by defendant, and in overruling special ground 2 of the plaintiff's amended motion for new trial.

■ The third defense is that Gulf was a beneficiary and entitled to the protection of the insurance policy, in that at the time of the loss Harper was indebted to Gulf for the destroyed property for more than the amount paid under the insurance policy; and the plaintiff paid the proceeds to Harper and Gulf in accordance with the initial agreement that Harper would insure the property with loss payable to Gulf, of which the plaintiff had knowledge at the time it assumed the risk of loss covered by the policy. Gulf contends that the payment constituted an accord and satisfaction whereby "plaintiff could not become

subrogated to the claim against. [Gulf] to recover back moneys paid to it."

The only authority cited by the defendant in support of this ground is *Firemen's Ins. Co. v. Georgia Power Co.*, 181 Ga. 621 (183 SE 799). The decision there was that, when the insurer had not asserted its right of subrogation until after the person responsible for the loss had paid off the insured, it was too late to assert the right against the defendant tortfeasor.

While we would agree that the plaintiff's payment was an accord and satisfaction of the rights of Harper and Gulf to collect the insurance proceeds, it does not follow that the payment or its acceptance was an accord or satisfaction of Harper's claim of another kind against Gulf.

The trial court did not err in sustaining the plaintiff's general demurrer to the third defense.

■ Defendant advances the same legal arguments discussed in Divisions 1 and 3 in support of its general demurrers to counts 1 and 2 of plaintiff's petition. For the reasons stated in those divisions, we hold that the trial court did not err in overruling the demurrers.

■ The ground of Gulf's general demurrers to count 3 of plaintiff's petition is that the allegations of the petition fail to show wilful and wanton negligence. The special demurrers are directed at the paragraph and subparagraphs containing plaintiff's specifications of wilful and wanton conduct, and contend that this paragraph and subparagraphs contain mere conclusions, in that the acts and omissions set forth therein do not constitute wilful and wanton negligence. One of the special demurrers contends that this paragraph and subparagraphs (which is two pages long) is defective because the allegations show only constructive knowledge of danger to others. The demurrer does not point to any particular allegations that are subject to this criticism, and some of them without doubt show actual knowledge. Therefore, the demurrer is itself insufficient. *Seaboard Air Line R. Co. v. Hollomon*, 97 Ga. App. 16, 25 (102 SE2d 185); *Harley v. General Motors Corp.*, 97 Ga. App. 348, 352 (103 SE2d 191).

The petition alleged that an employee of Gulf discovered that a valve on a 14,000-gallon storage tank was leaking, and placed

a 5-quart container under the valve, which remained over night and was full and running over the next day. The employee reported the leak to the plant manager. The plant manager and two employees were attempting to stop the leak, using a 12-inch Stillson pipe wrench. While the employees were working on the valve a huge explosion occurred resulting in a fire which consumed Harper's property. The following wilful and wanton acts of negligence of Gulf through its employees caused plaintiff's damage: (1) failure to notify the city fire department that the valve was still leaking upon their failure to succeed in repairing it, when they knew the leaking gasoline constituted an imminent danger to person and property; (2) failure ". . . to notify the city fire department that the aforesaid gasoline valve had blown, and that a ten foot geyser of gasoline was then erupting from the Gulf Crest tank," when they "were well aware that an eruption of gasoline as aforesaid constituted a clear and imminent danger to person and property, . . ."; (3) failure ". . . to have previously constructed a dirt or absorbent dike or dikes entirely around defendant's gasoline storage tanks to halt the flow of gasoline to adjoining property in event of a leak, . . . when the defendant as an experienced dealer in petroleum combustibles well knew that construction of such a dike or dikes was necessary to avoid the flow of gasoline and the spread of fire to adjacent property;" (4) failure ". . . to empty the 14,000 [gallon] vertical gasoline tank before proceeding to work on the valve . . . well knowing that when [an employee] began to loosen the two cover nuts and in repairing the valve . . . that static pressure in the tank, by hydraulic pressure, would force the plug from the valve body thus allowing the gasoline to geyser through the valve without impediment . . . and that such work . . . would likely lead to danger to adjoining persons or property . . ."; (5) "in using a 12-inch Stillson wrench to tighten the yoke bolts . . . while well knowing that the use of such a large and powerful wrench would cause the forged still cover gland to crack. . . . leading to the gasoline leak and in their experience they could have and should have foreseen the danger of a fire from the leaking gasoline, . . ."; (6) in acting as described in the peti-

tion "which could have been foreseen by defendant who as a company experienced in handling combustible products well knew that any leaking gasoline valve constituted a clear and imminent danger to adjoining property owners and who further well knew that wherever gasoline leaks there is a strong probability that fire will result, . . ."

"Whether the act done created a 'strong probability' that harm might result," and "whether certain conduct amounts to wantonness is a jury question if reasonable minds might disagree as to whether or not it is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit of actual intent." *Arrington v. Trammell*, 83 Ga. App. 107, 112, 113 (62 SE2d 451); *Brady v. Glosson*, supra.

As to whether the facts alleged by plaintiff show merely inadvertence, carelessness or bad judgment, amounting to negligence, or show recklessness or indifference to consequences amounting in spirit to actual intent, reasonable minds might reach different conclusions. Therefore, the trial court did not err in overruling the general and special demurrers to count 3 of the petition.

■ The trial court did not err in overruling special ground 1 of the motion for new trial complaining that the court over plaintiff's objection ruled out the testimony of an expert witness.

Since the witness, in another part of his evidence that went before the jury, gave substantially the same testimony as that ruled out, the exclusion complained of was not reversible error. *Southern R. Co. v. Ward*, 131 Ga. 21 (61 SE 913); *Central of Ga. R. Co. v. Mote*, 131 Ga. 166 (62 SE 164); *Stanfield v. Seaboard Air Line R. Co.*, 33 Ga. App. 29 (125 SE 504); *Hartley v. Sanders*, 45 Ga. App. 273 (164 SE 232).

Plaintiff has abandoned ground 3 of its amended motion for new trial. *Lumbermen's Underwriting Alliance v. Jessup*, 100 Ga. App. 518, 533 (112 SE2d 337).

Since a new trial will be required on other grounds and may possibly include different issues, it is not necessary to pass on the overruling of the general grounds of plaintiff's motion for new trial.

*On the main bill of exceptions, the judgment is reversed as to*

*the rulings discussed in Division 2, and affirmed as to the rulings discussed in Division 6. On the cross-bill of exceptions, the judgment is affirmed.* Felton, C. J., and Bell, J., concur.

### ON DEFENDANT'S MOTION FOR REHEARING.

HALL, Judge. ▮ Gulf contends that plaintiff is prevented from recovering as subrogee in this case by an express agreement by which Gulf required Harper to procure and maintain insurance acceptable to Gulf. In its pleadings Gulf alleged that Harper "was required under the terms of an agreement with defendant, dated December 11, 1958, to carry at all times, at his own expense, comprehensive, fire and theft insurance in an amount equal to the full value of all of the merchandise with loss payable to defendant with an insurer or insurers acceptable to defendant; that said agreement provided further that said merchandise shall be at the risk and expense of Harper in respect to loss, destruction or damage, . . ."

Gulf cites American Fidelity & Cas. Co. v. Simmons, 253 F2d 634 (4th Cir. 1958), as authority that Harper's agreement to insure the property prevents plaintiff's subrogation against Gulf. In that case the owner leased its truck and furnished a driver to an interstate carrier. The carrier procured public liability insurance, as it had agreed to do in the lease contract, and the carrier's insurer paid a negligence claim asserted against the carrier. The insurer as subrogee sued the owner for the amount of the claim paid. The court construed the lease contract, by which the carrier undertook to procure liability insurance, to mean that the carrier agreed to protect both itself and the owner against liability and that the carrier thereby gave up its right to recover from the owner who would otherwise have been primarily liable for damages caused by the operation of the truck. The court denied recovery to the insurer because its rights as subrogee could not be superior to those of the carrier.

In U. S. Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85 (139 NE 2d 330), a lease, interpreted as a whole, was held to relieve the lessee of liability to the lessor for fire caused by lessee's negligence; hence the lessor's insurer was denied recovery against the lessee because it had no greater right than the lessor.

There was a similar holding in Fry v. Jordan Auto Company, 224 Miss. 51 (80 S2d 53); but the court denied recovery on the ground that the proof was insufficient to show the lessee was negligent.

In the Simmons case, the subject of the agreement was insurance against negligence and the party primarily liable was released from liability to the insured. The agreement to insure pleaded in the present case is not comparable. We are not persuaded by the cases discussed above nor by New York Title & Mortgage Co. v. First National Bank of Kansas City, 51 F2d 485 (8th Cir. 1931), that the decision we have rendered is wrong. Even if we look beyond the alleged agreement requiring Harper to insure, we find no analogy to the cases cited by defendant, in which the agreement by the insured to procure insurance relieved another from liability to the insured, as in the present case Gulf was not relieved of liability to Harper for the negligence sued upon, by either the alleged agreement to insure or the exculpatory clause of the lease.

This court did not invent the distinction between an "open" loss payable clause and a standard mortgage clause. It has long been recognized in this jurisdiction and elsewhere. Gulf presumably was aware of the distinction at the time of all its transactions with Harper. Indeed it recognized that the policy sub judice contained "an open mortgage clause rather than a union or standard mortgage clause" in its original brief filed in this court. If Gulf required Harper to insure the property, it could have required precisely a policy under the terms of which it would have been an insured and could have made the transaction conditional on its approval of the terms of the policy.

■ Likewise Gulf, if it intended to enlarge the usual scope of exculpatory clauses in leases, could have spelled out specifically and exactly the liabilities from which it intended to relieve itself by the exculpatory clause. Gulf contends that by the first sentence and the first portion (preceding the first comma) of the second sentence quoted from the lease in Division 2 of the opinion, it had already relieved itself from liability arising out of its duties as landlord, and then by the remainder of the exculpatory clause it relieved itself of all other liability; and

that therefore, having first dealt with its liability as landlord, the only thing that could be meant by the succeeding language is negligence not arising from the lease relation. While insisting in its motion that the court should determine the intent of a contract by construing it as a whole, Gulf argues that we must construe two parts of the same sentence separately to arrive at the meaning of the exculpatory clause. We are not convinced by this argument.

Neither is the fact that the leased premises were located within the Gulf Plant sufficient to make the contract clearly and explicitly say that Gulf is relieved of liability for damage to Harper caused by Gulf's negligence in its bulk plant operations. The lease describes the premises as being 1,800 sq. ft. in a garage building located in "a tract of land known as Gulf Oil Corporation's Columbus, Ga. Bulk Plant on Sixty Ave.," and more particularly describes the leased space by reference to a layout plat of Gulf Oil Corporation. We adhere to our opinion that the exculpatory clause, construed in context with the entire lease, did not relieve Gulf from liability to Harper for property damage caused by negligence arising without regard to the lease relationship.

Gulf differs with the grammatical construction given by this court to the exculpatory clause. Though the court's construction is valid, the opinion is complete and supports the decision without the reason based on grammar.

*Motion for rehearing denied. Felton, C. J., and Bell, J., concur.*