**NORTHWESTERN NATIONAL CASUALTY COMPANY, Respondent,**

v.

**KHOSA, INC., et al., Defendants,**

**Mary Tigner, Appellant.**

**No. C5–94–442.**

Court of Appeals of Minnesota.

Aug. 30, 1994.

William L. French, Rochester, for appellant.

Charles F. Angel, O'Brien, Ehrick, Wolf, Deaner & Maus, Rochester, for respondent.

Considered and decided by NORTON, P.J., and RANDALL and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

The owner of a commercial building who was named as a loss payee on a tenant's insurance policy challenges the district court's summary judgment holding that the owner is not entitled to recover under the policy for damage to the building caused by the tenant in moving out. We affirm.

## FACTS

Mary Tigner is the owner of a commercial building in Rochester, Minnesota. In 1986, she agreed to sell the building and her interest in a management corporation to Geoffrey Roehrick. Roehrick leased space in the building to Khosa, Inc.

Khosa, Inc. operated a bar and restaurant in the space it rented. When Khosa, Inc. moved into the building, almost none of the equipment necessary to operate a bar and restaurant was present. Khosa, Inc. purchased or leased most of the necessary equipment, including stoves, sinks, televisions, a sound system, coolers, furnishings and inventory.

When Roehrick was unable to meet the financial obligations of his agreement to purchase the building, he conveyed title to the building back to Tigner and assigned the Khosa, Inc. lease to her as well. From then on, Khosa, Inc. made its rent payments to Tigner.

Under the terms of the lease, in addition to rent, Khosa, Inc. was obligated to pay the real estate taxes on the property. When Khosa, Inc. fell behind on this tax obligation, Tigner and Khosa, Inc. entered into a May 1992 agreement under which Khosa, Inc. would remedy the tax delinquency by paying installments on June 15, July 15, August 15 and September 15, 1992. Khosa, Inc. was unable to meet the obligations of the agreement, and on July 15, 1992, Tigner commenced an unlawful detainer action. Tigner also brought a separate action seeking, inter alia, to enforce a lease provision entitling Tigner to take possession of the personal property and fixtures in the building upon breach of the lease by Khosa, Inc. The unlawful detainer action was scheduled for a hearing on July 23, 1992. The directors of Khosa, Inc. decided to cease operations after July 22, 1992.

After the bar closed at 1:00 a.m. on July 23, Robin Khosa, her husband, and some friends removed personal property and most of the fixtures from the building. They removed sinks, coolers, compressors, hoods, lights, televisions, the sound system and more. The people who removed these fixtures were not professional movers. According to Robin Khosa, the movers tried not to damage the building. According to Tigner, the movers cut compressor wires to coolers, left electrical wiring hanging from the ceiling, left holes in the floors and walls and cut off air conditioning to the other tenants in

the building. The property was taken out of the building so that Tigner could not seize it.

Tigner's attorney and Tigner's son attended the hearing on the unlawful detainer action on July 23. There was no appearance by Khosa, Inc. After the hearing, Tigner's attorney and son went to the premises and found them vacant and the building damaged. Mary Tigner promptly contacted the Rochester Police Department.

As required by the lease, Khosa, Inc. obtained insurance from Northwestern National Casualty Company. The Northwestern policy designates Khosa, Inc., d/b/a Max's on Broadway, as the named insured.

Although the lease required Khosa, Inc. to name Tigner as an additional insured, Mary Tigner is designated as a loss payee on the loss payable clause of the Northwestern National policy. The loss payable clause has three possible applicable provisions: loss payable, lender's loss payable, or contract for sale. The policy identified Tigner as a loss payee under the loss payable provision, which states:

### B. LOSS PAYABLE

For Covered Property in which both you [Khosa, Inc.] and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Northwestern National commenced this declaratory judgment action, seeking a determination of its obligation to Khosa, Inc., Midwest Savings Association and Tigner. Northwestern National moved for summary judgment against Khosa, Inc. and Tigner. With respect to Tigner's claims, Northwestern National relied on two exclusions. The "dishonest or criminal act" exclusion stated:

2. We will not pay for loss or damage caused by or resulting from any of the following:

' *    *    *    *    *    *

h. Dishonest or criminal act by you.

*    *    *    *    *    *

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

*    *    *    *    *    *

Northwestern National also relied on the following "wear and tear" exclusion:

2. We will not pay for loss or damage caused by or resulting from any of the following:

*    *    *    *    *    *

d. (1) Wear and tear.

In addition, Northwestern National argued that Tigner's rights as a loss payee are no greater than the rights of the named insured, Khosa, Inc.

The district court granted Northwestern National's motion for summary judgment. With respect to Khosa, Inc., the court noted that there had been no appearance and granted judgment in favor of Northwestern National, holding that Khosa, Inc. had no claim on the Northwestern National policy. The court also granted summary judgment against Tigner, without specifying the basis of that decision. After Northwestern National dismissed Midwest Savings pursuant to Minn.R.Civ.P. 41.01, Tigner appealed.

### ISSUE

Did the district court err in determining that Tigner had no right to recover under the Northwestern National policy loss payee provisions?

### ANALYSIS

#### I. *Standard of Review*

Summary judgment may be granted when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. A material fact issue is one which will affect the result or the outcome of the case depending on its resolution. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). In reviewing a summary judgment, the court of appeals must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Offerdahl v. Uni-*

*versity of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

Interpretation of an insurance policy is a question of law, as applied to the facts presented. *Associated Independent Dealers v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 183, 229 N.W.2d 516, 519 (1975). The court of appeals reviews questions of law de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn. 1985).

## II. *Coverage*

Northwestern National contends that the damage to the building is excluded from coverage by the wear and tear exclusion and the dishonest or criminal act exclusion in its policy. We need not decide whether either exclusion would bar coverage because Tigner has not established that any coverage exists. *See Dakhue Landfill v. Employers Ins. of Wausau,* 508 N.W.2d 798, 803 (Minn.App.1993) (initial burden of showing coverage is on person claiming coverage). We note, however, that the damage to the building was far beyond the ordinary or natural deterioration of the building that would constitute wear and tear. *See Johnson & Towers Baltimore, Inc. v. Vessel Hunter,* 802 F.Supp. 1343, 1349–51 (D.Md.1992). Nor are we convinced that summary judgment would be proper with respect to the dishonest or criminal act exclusion. Khosa, Inc. removed its own property from the building, and there are issues of fact as to whether the conduct of Khosa, Inc. was dishonest. In addition, no criminal charges have been brought, and the exclusion does not apply to acts of destruction by the named insured's employees.

The coverage afforded Tigner by the Northwestern National policy does not extend to her claim. In this case, Tigner bases her right to recovery on the loss payable provisions of the Northwestern National policy. There are two primary methods by which the interest of someone other than the named insured in the insured premises can be protected: the standard mortgage clause; and the loss payable clause. The two clauses provide far different levels of protection.

A standard mortgage clause constitutes an independent contract between the insurer and the mortgagee. 5 Mark S. Rhodes, *Couch on Insurance 2d* § 29:65 (Rev. ed. 1984). This independent contract between the insurer and the mortgagee cannot be defeated by the conduct of the mortgagor; the contract's coverage is coextensive with the mortgagee's interest in the property. *Id.*

A loss payable clause, on the other hand, makes the loss payee an agent for collection. *Id.,* § 29:66. The right of the loss payee to recover can be extinguished in situations where the named insured has no right to recover. *Id.* The loss payable clause makes the loss payee "an appointee to collect the insurance money due to the insured in case of loss, and such [loss payee] must claim in the right of the insured, and not in his own." *Insurance Co. of N. Am. v. Gulf Oil Corp.,* 106 Ga.App. 382, 127 S.E.2d 43, 45 (1962) (*INA*) (quoting *Northwestern Nat'l Ins. Co. v. Southern States Phosphate & Fertilizer,* 20 Ga.App. 506, 93 S.E. 157 (1917)). A loss payable clause does not constitute a separate contract between the loss payee and the insurer; the insurance policy remains strictly a contract between the insurer and the named insured, with a right of collection vested in the loss payee. *Id.,* 127 S.E.2d at 46. *But see Farmers State Bank v. Western Nat'l Mut. Ins. Co.,* 454 N.W.2d 651, 653 (Minn.App.1990) (where loss payable clause provided that loss payee's right of recovery would not be affected by conduct of named insured, loss payable clause created separate contract between insurer and loss payee).

In this case, the loss payable clause grants Tigner a right to share in the recovery of any insurance proceeds that Khosa, Inc. may make. The loss payable clause did not constitute a separate contract between Northwestern National and Tigner. Rather, Tigner's rights under the loss payable clause are derivative of the rights of Khosa, Inc. *INA,* 127 S.E.2d at 45.

Before Tigner can make any recovery, Khosa, Inc. must be entitled to recover. Khosa, Inc. has made no claim for coverage under the commercial property coverage of

the Northwestern National policy and made no appearance in the present action. Tigner's right to share in Khosa, Inc.'s claim depends on assertion of that claim by Khosa, Inc. Tigner has no right to assert the claim. Because Khosa, Inc. has not claimed a right to recover under the commercial property coverage of the Northwestern National policy, Tigner cannot assert an interest in the claim of Khosa, Inc.

## DECISION

Tigner has no right of recovery under the Northwestern National policy. Summary judgment was proper.

**Affirmed.**