46322.   RAGLAND et al. v. ROOKER et al.
46323.   ROOKER et al. v. GOOLSBY.
46324.   ROOKER et al. v. RAGLAND.

362

SUBMITTED JUNE 28, 1971—DECIDED JULY 15, 1971—
REHEARING DENIED JULY 29, 1971.

*Phillip Slotin, Rees Smith,* for Ragland and Goolsby.

*Neely, Freeman & Hawkins, Edgar A. Neely, Jr.,* for Rooker.

DEEN, Judge. ■ The thrust of the plaintiff's action is that the constuction and leasing of a building in which an unvented open-

flame radiant gas heater and gas stove may be used is negligence, and that the defect may be latent when it occurs in a living area which is otherwise airtight. The defendants contend that such a building pattern is not negligent because the windows and doors, if properly used, themselves act as vents, and that in any event the contributory negligence of the occupants is such as to bar these actions. Georgia has already held that whether or not the installation of such a heating system without a vent, so that carbon monoxide gas may be generated and injure persons in its vicinity, constitutes negligence is a jury question. *Davey v. Turner*, 55 Ga. App. 786 (191 SE 382). In a similar case, Gaida v. Hourgettes, 67 S. 2d 737, 742 (La. App.), the court held: "Common sense and common knowledge dictate to us that a gas operated water heater with Bunsen burner should be properly vented even in the absence of a local ordinance or law not specifically providing that such a heater must be equipped with a vent." That case involved carbon monoxide poisoning because of the activity of an unvented water heater, whereas here, although the water heater had an exhaust vent, it had no inlet vent and neither the stove nor the radiant heater had any provision for venting at all. The argument that it was the tenant who installed the radiant heater begs the question; the landlord anticipated that the tenant would require heat, by the terms of the lease obligated itself to furnish no utilities except water, and made provision for a gas stove in the bed-living room by running a gas line stub up through the concrete floor. Since no vent was provided, and a vented heater would have been of no use to the tenant under the circumstances, she was not negligent in purchasing a heater which did not provide for a vent. Indeed, due to the construction of the house, a vent could only have been used by cutting through a four-inch solid brick wall. In addition there is substantial expert testimony, contradicted in various respects, to the effect that there were four or five steel casement windows, none of which could be opened except by unlocking them, going around to the outside and pulling them open; that there were two doors, one in each room, wood case with sheet steel over the outside; that they were all very tight fitting and the apartment was built of solid brick covered with concrete and plaster, with concrete slab floor and roof, all of

which allowed substantially less air intake than equivalent frame construction and that this, in connection with the lack of vents, constituted grossly substandard construction lacking in normal safety provisions. That the house was built by the defendant, Muscogee Corporation, of which the defendants, Rooker, Sr. and Rooker, Jr., are president and vice president respectively, is undisputed. In the case of defective construction by the landlord, its knowledge of the defect is conclusively presumed. *Scarboro Enterprises, Inc. v. Hirsh,* 119 Ga. App. 866, 868 (169 SE2d 182); *Monahan v. Nat. Realty Co.,* 4 Ga. App. 680 (1) (62 SE 127). So far as the tenant is concerned, and assuming that she even knew what a heater vent was, which she denied, knowledge when she rented the apartment that there was no place to install a vented heater would not necessarily be knowledge of the danger inherent in using such a heater with the type of construction used by the builder and alleged by the plaintiff to constitute a "mantrap" and "gas chamber." The night in question, January 15, was of below freezing temperature; the explanation offered by the plaintiff that she did not go outside and pull the windows open because of the cold, the fact there were young infants inside, and the fact that she was afraid in that neighborhood to leave the doors and windows open, are all elements to be considered in regard to a determination of proximate cause and contributory negligence. A jury question is presented on this issue. The case differs in this respect from *Hyde v. Bryant,* 114 Ga. App. 535 (151 SE2d 925) where the injuries were alleged to have resulted solely from the fact that the gas heater did not have a protective grill, a patent defect notice of which was chargeable equally to all parties. Further, the *Hyde* case was decided on demurrer, which under the practice at that time, required a construction of the petition against the tenant, whereas the issue here is on summary judgment and requires a construction in her favor.

■ In the action by Goolsby for the death of his wife and two young children the question next arises as to whether certain provisions in the lease between Muscogee Corporation and Beatrice Ragland as landlord and tenant are to be given any consideration, it being undisputed that at the time of the event the Goolsbys were on the premises as invitees of Ragland. For a general sum-

mary of the question see Anno. 12 ALR3d 958, regarding the effect on nonsigners of lease provisions exempting the landlord from liability on account of the condition of the property. While there is a conflict of law, it appears that a majority of the states which have dealt with the question have concluded that lease provisions exculpating the landlord, whatever their effect on the tenant's right to bring his own action or on his liability over on the action of a third person, have no effect on the right of action of a third party. Georgia properly belongs in this category. In *Greene v. Birdsey*, 45 Ga. App. 103 (163 SE 242) the tenant had signed a lease containing provisions relieving the landlord from any duty to repair, accepting the premises in the condition they were in at the time of the lease, and releasing the landlord from any and all damages to both person and property. The Court of Appeals reversed a verdict and judgment in favor of an injured third party, holding that the trial court erred in excluding the lease contract from evidence when offered by the defendant landlord as a defense. This opinion was reversed in *Birdsey v. Greene*, 176 Ga. 688 (168 SE 564). A reading of the opinion shows that the Supreme Court considered the lease-provision defense on which error was assigned. This court thereafter, in *Greene v. Birdsey*, 47 Ga. App. 424 (170 SE 681) conformed its judgment and specifically held that "the court did not err in excluding from evidence the contract of rental between the defendant and the tenant whereby the defendant was relieved of any obligation to make repairs of the premises." This latter case has been twice cited by this court to the effect that "a provision that the landlord shall not be liable for repairs, although relieving him of all liability as between himself and his tenant, does not release him from liability toward a third person in a situation where he would otherwise be liable." *Levy v. Logan*, 99 Ga. App. 253, 255 (108 SE2d 307); *Leonard v. Fulton Nat. Bank*, 86 Ga. App. 635 (72 SE2d 93). It is thus well settled that indemnifying and exculpatory provisions in leases in Georgia are not operative as against nonsignatories, regardless of their effect on the parties to the lease. Since none of these cases deals with an action by a tenant against the landlord, any language therein commenting on the relative rights of the signatories is obiter dictum. Nothing contained in the lease agreement would

have prohibited Mrs. Goolsby or her children from bringing an action for personal injury if they had lived, or prevents the husband from bringing this action for the value of their lives following their death.

■ "A landlord may by express contract relieve himself from liability for concealed defects in the premises, known to him but unknown to the tenant." *Jadronja v. Bricker,* 49 Ga. App. 37 (174 SE 251). But while one may exempt himself by contract from liability to the other party for injuries caused by his negligence, he is not thereby relieved from injury caused by wilful or wanton misconduct on his part, that is, conduct so charged with reckless indifference to consequences that the jury may find it equivalent in spirit to actual intent. *Hawes v. Central of Ga. R. Co.,* 117 Ga. App. 771 (162 SE2d 14). Where the exculpatory provision relied on in the lease is a specific *release* of the landlord by the tenant for injuries *due to the landlord's negligence,* the question of knowledge by the landlord is not involved because, in the absence of a duty to repair, notice of the defects becomes immaterial. *Sinclair Refining Co. v. Reid,* 60 Ga. App. 119, 123 (3 SE2d 121); *Carter v. Noe,* 118 Ga. App. 298 (1) (163 SE2d 348); *Capital Wall Paper Co. v. Callan Court Co.,* 38 Ga. App. 428 (144 SE 135). While a release has the effect of freeing the landlord from responsibility, an indemnity agreement will not, in the absence of explicit language to this effect, release the indemnitee from the consequences of his own negligence. *Batson-Cook Co. v. Ga. Marble &c. Co.,* 112 Ga. App. 226, 230 (144 SE2d 547); *Scarboro Enterprises, Inc. v. Hirsh,* 119 Ga. App. 866, 870, supra; *Plaza Hotel Co. v. Fine Products Corp.,* 87 Ga. App. 460 (74 SE2d 372); *Bohannon v. Southern R. Co.,* 97 Ga. App. 849 (104 SE2d 603); *Ins. Co. of North Amer. v. Gulf Oil Corp.,* 106 Ga. App. 382, 389 (127 SE2d 43).

The lease provisions applicable in the present case are as follows: "Tenant accepts premises in the condition in which they now are and as suited for the use intended by tenant. Landlord shall not be required to make any repairs or improvements on the premises except that, upon written notice from tenant of any defect rendering the same unsafe or untenantable, landlord shall remedy such defective condition. Tenant shall repair . . . all glass and windows . . . Tenant shall be liable for and shall hold landlord

harmless on account of any damage or injury to the premises, to the person or property of tenant . . . or of anyone else, if such damage or injury be due to the act or neglect of the tenant . . . or . . . to any failure of the tenant to report in writing to the landlord any defective condition which the landlord would be required to repair under the terms hereof on notice from tenant."

The lease is a printed form furnished by the landlord; the tenant's testimony was that she had to sign it in order to get the keys to the apartment. It must, therefore, be construed against the defendants because (1) exculpatory provisions must be construed against the indemnitee; (2) contracts must be construed against the signatory preparing them, and (3) evidence on motion for summary judgment is construed against the movant. "Provisions in a contract of lease exempting the lessor from liability for his own negligence are generally to be strictly construed. 175 ALR 89, § 47; 26 ALR2d 1054, § 11. This is partly for the reason that the law does not look with favor on contracts the purpose of which is to exempt a person from his liabilities under existing law, and partly for the reason that, since contracts must be construed according to the intention of the parties at the time of their execution it will not be presumed that parties intend to contract away their legal rights in regard to a subject matter not clearly appearing therein." *Covington v. Brewer,* 101 Ga. App. 724, 729 (115 SE2d 368). So construed, we reach the following conclusions: (1) The provisions above quoted are not an absolute release from liability for injury due to the landlord's negligence. (2) The landlord is not relieved from making all repairs, but only from making repairs or improvements which do not affect the safety and "tenantability" of the premises. (3) The tenant and only the tenant was responsible for replacing the defective handles on the windows. (4) The tenant's acceptance of the premises as suited for the use intended was not a waiver of defects existing at the time of the contract known to the landlord but unknown to the tenant. (5) The "hold-harmless" provision frees the landlord from liability for injury due to the tenant's negligence, and for injury which proximately results from the failure of the tenant to report in writing a defect rendering the premises unsafe. As we have seen above, the evidence before the court on the summary judgment motions

indicates that the tenant had no knowledge of the danger inherent in using an open-flame heater without a vent, whereas the landlord, having constructed the apartment and made provision for the availability of such heater, is conclusively charged with knowledge thereof. The tenant has exculpated the landlord, as to defects rendering the premises unsafe, only against those injuries the proximate cause of which results from the tenant's neglect or the tenant's failure to report the defect which renders the premises unsafe. A jury on the trial of the case would be at liberty to conclude from all the evidence, including that with reference to the contributory negligence of the tenant, if any, that such failure precludes recovery by the tenant in her action for the death of her minor child, or it would be at liberty to conclude, if there is evidence to that effect, that since the landlord was aware of the defect, having itself constructed the premises, the failure to give notice was not a proximate cause of the asphyxiation. It should be noted, as to *Point Apartments, Inc. v. Bryant,* 99 Ga. App. 110, 113 (107 SE2d 684), although the court held that the tenant had contracted away the landlord's liability by means of a similar exculpatory provision in the lease agreement, the case is not a precedent here because it dealt only with the duty to repair after notice. The court pointed out at p. 113: "We are not concerned with the further provision of *Code* § 61-112 placing on the landlord an absolute liability for defects in construction, since it is not contended here that the termite damage resulted from defective construction."

The trial court properly overruled all motions for summary judgment.

*Judgments affirmed. Bell, C. J., and Pannell, J., concur.*