58933. COUNTRY CLUB APARTMENTS, INC. v. SCOTT.

SMITH, Judge.

By way of interlocutory review, we affirm the trial court's denial of appellant's motion for judgment on the pleadings.

Appellee Angela Scott made the following allegations in her complaint: "On October 24, 1978, Plaintiff and Defendant entered into a lease agreement whereby Plaintiff was to occupy an apartment designated 13B, Country Club Apartments, the same

being owned by the Defendant. The term of said lease was for six (6) months, commencing November 20, 1978.

"Plaintiff moved into the apartment on November 26, 1978 and spent her first night there on that date. She awoke the following morning suffering from a severe headache. Her condition improved during the day but when she awoke the following morning the headache had returned, along with nausea. This condition continued through the week, with Plaintiff's symptoms each morning becoming progressively worse.

"Plaintiff came under the care of William E. Adams, M.D., who caused her to be hospitalized in the Doctor's Hospital the following Sunday, December 3, 1978.

"Plaintiff underwent an angiogram procedure, spinal tap, EEG and other tests, and was discharged from the hospital on December 6, 1978, her symptoms having subsided. Plaintiff stayed at her parents' home until Sunday, December 10th, at which time she returned to the apartment.

"On Monday, December 11th, Plaintiff awoke again with a severe headache and fainted four (4) times before she could gain the strength to leave the apartment. She consulted again with Doctor Adams at 2:00 P.M. on said date, suffering at the time with a headache and nausea; whereupon, she was put back in the hospital where she underwent further tests, to-wit: EEG, glucose tolerance, blood count and heart. She remained hospitalized until December 14th when she returned to the apartment and her mother, Mrs. Ocie O. Scott, and her sister, Valarie Scott, came to spend the night with her.

"That evening, all three became mildly ill, Plaintiff suffering once again with a headache, a ringing in the ears, lack of balance, dizziness and nausea.

"The following morning all three were violently ill.

"Plaintiff, her mother and sister were then given a blood test at the Columbus Medical Center by Doctor Adams and said tests showed a level of carbon monoxide in Plaintiff's blood of 14.3, this being markedly abnormal.

"The Gas Light Company of Columbus was called to check the heating unit in Plaintiff's apartment and it was learned that a pipe connecting to a vent, the function of which was to take carbon monoxide out of the heater and the apartment was loose, permitting carbon monoxide gas to escape into the apartment, causing Plaintiff's infirmities, which nearly resulted in her death.

"There was a latent defect, of fatal capabilities, on the premises rented by Plaintiff, which Defendant could have ascertained by the exercise of ordinary care, and of which Plaintiff had no knowledge.

"Defendant, by the terms of its lease with Plaintiff (which lease was drawn and furnished by Defendant), retained a supervision and control over Plaintiff's rented premises by (1) retaining a resident agent to collect rents (2) keeping full time employees for purposes of maintenance and repair in the apartment complex occupied by Plaintiff (3) promulgating rules and regulations by which Plaintiff and other tenants were to comply and (4) by requiring Plaintiff and other tenants in the complex to permit Defendant's agents to enter upon the premises rented to examine the condition thereof and to maintain the premises."

In its motion for judgment on the pleadings, appellant asserted that it was not liable for any damage to appellee because of the following exculpatory clause in the lease: "Tenant hereby releases Landlord and Landlord's agents from any and all damages to both person and property and will hold them harmless from all such damages during the term of this rental agreement, whether due to negligence of Landlord, Landlord's agents or other tenants or anyone else."

1. The trial court found the exculpatory clause contained in the lease "ambiguous because it does not address itself to negligence that may have occurred prior to the inception of the lease agreement, and it does not address itself to negligence in turning over premises in a defective condition."

We cannot accept the trial court's conclusion that the exculpatory provision is ambiguous. The exculpatory provision purports to release appellant from "all damages" regardless of cause. See *Camp v. Roswell Wieuca Court Apts.,* 127 Ga. App. 67 (192 SE2d 499) (1972). The provision is not ambiguous. Rather, it is all-inclusive.

2. Nonetheless, we believe the trial court properly denied appellant's motion for judgment on the pleadings.

The general rule has been that a landlord can exculpate himself from damages occurring to the person or property of a tenant during the period of the lease as a result of ordinary negligence on the part of the landlord. *Camp v. Roswell Wieuca Court Apts.,* supra; *Akin v. Hardeman-Long Corp.,* 129 Ga. App. 303 (199 SE2d 621) (1973); *Sport Shop, Inc. v. Churchwell,* 131 Ga. App. 718 (206 SE2d 715) (1974); *Smith v. General Apt. Co.,* 133 Ga. App. 927 (213 SE2d 74) (1975); *Tek-Aid, Inc. v. Eisenberg,* 137 Ga. App. 99 (223 SE2d 29) (1975). See also 49 ALR3d 321. However, "[a] landlord impliedly warrants that the rented premises are in good repair *at the time* they are rented; and if they are not, by reason of a *latent* defect . . . he is liable if he *actually* knew they were not, or if by the exercise of ordinary care he could have discovered that they

were not, if the defective condition is latent and is the proximate cause of the injury. *Ross v. Jackson,* 123 Ga. 657 (51 SE 578); *Robinson v. Odom,* 35 Ga. App. [262] 263 (133 SE 53)." *Wilson v. Elijah A. Brown Co.,* 62 Ga. App. 898, 900 (10 SE2d 219) (1940), reversed on other grounds, *Elijah A. Brown Co. v. Wilson,* 191 Ga. 750 (13 SE2d 779) (1941). The landlord's warranty exists by operation of law in the interest of safety. The warranty cannot be defeated by an exculpatory provision in the lease. To the extent that the following cases conflict with the views expressed herein, they are overruled: *Camp v. Roswell Wieuca Court Apts.,* supra; *Akin v. Hardeman-Long Corp.,* supra; *Sport Shop, Inc. v. Churchwell,* supra; *Tek-Aid, Inc. v. Eisenberg,* supra; and *Ragland v. Rooker,* 124 Ga. App. 361 (183 SE2d 579) (1971).

While it may appear that our holding in this case constitutes a major shift in this court's view of "public policy" relative to exculpatory clauses in leases, we note that Code § 20-504 provides in part: "Contracts against public policy; illustrations . . . A contract which is against the policy of the law cannot be enforced . . . A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure, appurtenances and appliances . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable . . ." See Ga. L. 1970, p. 441. A landlord's implied warranty concerning latent defects existing at the inception of the lease is sufficiently analogous to a contract for maintenance or repair that an exculpatory provision purporting to nullify the effect of the implied warranty is void and unenforceable under Code § 20-504.

Moreover, a 1976 amendment to Code § 61-102 (Ga. L. 1976, p. 1372, 1373) provides: ". . . (b) A landlord or tenant may not waive, assign, transfer, or otherwise avoid in any contract, lease, license agreement, or similar agreement, oral or written, for the use or rental of real property as a dwelling-place any of the rights, duties, or remedies contained in the following provisions of law, as now or hereafter amended:

"(1) Section 61-111, relating to duties of a landlord as to repairs and improvements."

". . . [I]f the facts be such that by the exercise of ordinary care in the performance of his obligation to keep the premises in repair he ought to have known of a latent defect therein, he becomes

answerable in damages to the tenant, or one entering under the authority of the tenant, for personal injuries sustained by reason of such defect . . ." (Emphasis supplied.) *Elijah A. Brown Co. v. Wilson,* supra, at 751; *Oglesby v. Rutledge,* 67 Ga. App. 656 (21 SE2d 497) (1942). In our view, it would be incongruous to hold that a residential landlord's duty to "keep the premises in repair" (Code § 61-111) cannot be waived (Code § 61-102) and yet maintain the position that a residential landlord can contractually relieve himself from liability for failure to satisfy that duty where liability would otherwise attach.

*Judgment affirmed. Shulman, Banke and Carley, JJ., concur. McMurray, P. J., concurs specially. Deen, C. J., Quillian, P. J., Birdsong and Sognier, JJ., dissent.*

ARGUED NOVEMBER 20, 1979 — DECIDED MARCH 19, 1980 —
REHEARING DENIED APRIL 3, 1980 —

*Edward W. Szczepanski, Jr., Ronald W. Self,* for appellant.
*Harry Dicus,* for appellee.

McMURRAY, Presiding Judge, concurring specially.

I concur in the judgment of affirmance but not for the reasons stated in the majority opinion.

However, I do agree fully with the majority that the language of the lease or rental contract is not ambiguous. But I simply do not agree that the law of Georgia should be changed drastically by the overruling of the various cases therein mentioned so as to create public policy different from that already established. However, I in no degree accept the opinions expressed in the dissents.

We are no longer involved in issue pleadings but are now concerned with notice pleadings. We cannot simply decide the petition is subject to general demurrer and dismiss the complaint. Construing the pleadings against the pleader is now obsolete since the enactment of the Civil Practice Act. *Ellington v. Tolar Const. Co.,* 237 Ga. 235, 237 (227 SE2d 336). It is true that in no less than four or five instances the plaintiff pleads positively that the defendant was lacking in ordinary care and diligence in the rental of this apartment. Yet it is quite evident from the facts alleged that the plaintiff may be (that is, if the jury so finds) able to prove that the defendant has failed to exercise slight care for the protection of the tenants. It could be that the defendant was guilty of wilful and wanton conduct in the rental of this defective and dangerous

apartment to the plaintiff so as to amount to a greater degree of culpability than that of mere gross negligence. The pleadings, by the facts, imply this even though the pleader again and again refers to defendant's conduct as mere simple negligence or as a failure to exercise ordinary care. See such cases as *Frye v. Pyron,* 51 Ga. App. 613 (3) (181 SE 142); *Brady v. Glosson,* 87 Ga. App. 476, 480 (74 SE2d 253), and cases cited therein. We must look at the substance of the pleadings and not mere nomenclature. *Girtman v. Girtman,* 191 Ga. 173, 180 (4) (11 SE2d 782); *Chance v. Planters Rural Tel. Cooperative,* 219 Ga. 1, 5 (131 SE2d 541), and cits. Issues of negligence, simple or gross, or wilful and wanton conduct, all lie peculiarly within the province of the jury to determine. See *Powell v. Berry,* 145 Ga. 696, 697 (2-c) (89 SE 753); *Hanchey v. Hart,* 120 Ga. App. 677, 680 (171 SE2d 918).

The trial court did not err in denying the motion for judgment on the pleadings. I would affirm the judgment, and to this degree I concur in the judgment reached by the majority.

I, therefore, concur in the judgment only.

QUILLIAN, Presiding Judge, dissenting.

I respectfully dissent from the opinion. This court, in a case written by Judge Pannell, under an almost identical situation, held: "This case is in this court on a joint appeal in six cases involving actions brought against a landlord owner of an apartment complex and the landlord's agent seeking recovery of damages to persons and property resulting from a fire allegedly caused by a defective heater in one of the apartments, based upon the negligent failure to repair this heater and upon negligent construction of buildings permitting the fire to spread, one of the cases being an action by a husband and wife. A motion for summary judgment by the defendants in each case was sustained by the trial judge in a single order and plaintiffs filed a joint appeal to this court. Held:

"1.(a) In view of the provisions in each of the leases that 'It is expressly agreed and understood that Lessee releases Lessor and/or Agent from any and all damage or injury to person or property of Lessee suffered upon the premises herein leased, and will hold the Lessor and/or Agent harmless from all damages sustained during the term of this lease,' there was no error in sustaining the motion for summary judgment in those cases brought by all appellees who were signatories to the leases . . . *Ragland v. Rooker,* 124 Ga. App. 361, 366 (183 SE2d 579); *Capital Wall Paper Co. v. Callan Court Co.,* 38 Ga. App. 428 (144 SE 135); *Plaza Hotel Co. v. Fine Products Corp.,* 87 Ga. App. 460 (74 SE2d 372); *Carter v. Noe,* 118 Ga. App.

298 (163 SE2d 348)." *Camp v. Roswell Wieuca Court Apts.*, 127 Ga. App. 67 (192 SE2d 499).

The quoted opinion has been subsequently approved and followed in *Akin v. Hardeman-Long Corp.*, 129 Ga. App. 303 (199 SE2d 621), *Sport Shop v. Churchwell*, 131 Ga. App. 718 (206 SE2d 715), *Smith v. General Apt. Co.*, 133 Ga. App. 927 (213 SE2d 74), and *Tek-Aid, Inc. v. Eisenberg*, 137 Ga. App. 99 (223 SE2d 29). These decisions are controlling in the case sub judice and there is no sound basis for overruling them.

For the foregoing reasons I respectfully dissent.

I am authorized to state that Chief Judge Deen, Judge Birdsong and Judge Sognier join in this dissent.

BIRDSONG, Judge, dissenting.

I concur in the dissent authored by Judge Quillian. While I agree that generally the law as set forth in the cases cited by Judge Smith, to wit: *Ross v. Jackson*, 123 Ga. 657 (51 SE 578); *Wilson v. Elijah A. Brown Co.*, 62 Ga. App. 898 (10 SE2d 219); *Robinson v. Odom*, 35 Ga. App. 262 (133 SE 53) is correct, however, in none of these cases was there an exculpatory provision as in the instant case, and therefore are inapposite.

Furthermore, a similar provision absolving the landlord due to his sole but simple negligence has been held not to contravene public policy. *Jaffe v. Davis*, 134 Ga. App. 651, 652 (215 SE2d 533). Evidence showing nothing more than a simple breach of warranty demonstrates at best simple negligence and in the absence of evidence that the omission by the landlord was either wilful in nature or so charged with indifference to consequences as to evidence a wantonness equivalent to an actual intent, such a release provision is sufficient to absolve the landlord from acts of simple negligence. See *Brady v. Glosson*, 87 Ga. App. 476, 478 (74 SE2d 253).

I respectfully dissent.