Frank SPENCER, Plaintiff-Appellant,

v.

CROW ENTERPRISES, INC.,
Defendant-Respondent.

No. 44039.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 15, 1982.

Frederick W. Drakesmith, St. Charles, for plaintiff-appellant.

Jerome W. Seigfreid, Mexico, for defendant-respondent.

DOWD, Presiding Judge.

Plaintiff sustained personal injuries when a canopy fell from a building constructed and owned by defendant. Plaintiff appeals from the trial court's granting of defendant's motion for directed verdict at the close of plaintiff's case. Plaintiff contends he made a submissible case that defendant negligently constructed and secured the canopy, that defendant knew or should have known that the canopy's condition was dangerous, and that defendant negligently failed to warn its tenant or plaintiff of the dangerous condition. Since we agree that plaintiff made a submissible case on defendant's negligence, we need not discuss plaintiff's other theories of recovery.

A court should grant a directed verdict for defendant only when no issues of fact remain for the jury to decide. *Teachenor v. DePriest*, 600 S.W.2d 122, 124 (Mo.App.1980). A directed verdict at the close of plaintiff's case is proper if all the evidence and reasonable inferences therefrom are so strongly against plaintiff that reasonable minds could not differ. *Crouse v. Burkemper*, 593 S.W.2d 234, 235 (Mo.App. 1979). In determining whether plaintiff made a submissible case, we must consider all the evidence in a light most favorable to plaintiff, take his evidence as true, and give him the benefit of all reasonable inferences arising from the evidence. *Vaeth v. Gegg*, 486 S.W.2d 625, 628–29 (Mo.1972).

Although defendant contends that plaintiff's motion for new trial preserved nothing for review, if plaintiff made a submissible case, the trial court's direction of a verdict against plaintiff would constitute plain error. *Woosley v. State Auto. Mut. Ins. Co.*, 600 S.W.2d 210, 211 (Mo.App.1980). We now consider the evidence and inferences therefrom in the light most favorable to plaintiff.

In 1966 defendant constructed a brick building to lease as the Farber, Missouri, post office. The building had a cano-

pied concrete slab at the back door for receiving mail deliveries. The wooden canopy measured approximately eleven feet wide and eleven feet six inches long. Toward the canopy's front or outer edge and across its width was nailed a four-by-four, supported at each end by a metal post bolted to the concrete slab. The canopy's inner end plate was secured with twenty-penny nails to the studs of the back wall of the building.

At the time of his injury, plaintiff had worked for Weber's Truck Service for about a year. His duties included delivering mail from the post office in St. Charles, Missouri, to the post office in Farber. Plaintiff made his deliveries by backing his truck up to, and often slightly under, the canopy. The truck could move underneath the canopy until it reached the four-by-four, which extended four inches below the underside of the canopy. Approximately eleven months prior to the canopy's collapse, plaintiff backed the truck too far under the canopy and slightly nicked or dented the four-by-four. He examined the board at that time and observed other older nicks or dents similar to the fresh one. During the year preceding the accident, plaintiff delivered mail to Farber about every two weeks. He could not definitely say that he never again struck the four-by-four with his truck, but he testified that he did not strike it on the morning of the accident.

On August 31, 1973, plaintiff backed his truck under the canopy to within three or four inches of the four-by-four. After unloading the mail, he discovered that the truck would not start. When the same problem had arisen elsewhere on the day before, plaintiff had succeeded in starting the truck by coasting and "popping the clutch". Therefore, after ensuring there was clearance between the canopy and the top of the truck, he attempted to push the truck from behind while the postmaster depressed the clutch and steered. Plaintiff rocked the truck several inches forward and it rolled back to its original position. It is unknown whether the truck hit the canopy at that time, although neither plaintiff nor

the postmaster heard any noise before the canopy crashed to the ground. In any event, as plaintiff began to push the truck again, the end of the canopy that had been attached to the building struck his left leg and came to rest on his left ankle and right foot.

After the accident, an expert in civil engineering, structural analysis, and construction methods inspected the building at the place where the canopy had been nailed. He found that one nail had just grazed a stud in the wall and another nail completely missed its stud. In response to hypothetical questions, the expert testified that the lateral load on the nails attaching the canopy to the building was excessive. Basing his opinion on the usual rules of design for such a structure at that latitude, the expert stated that either sixteen-penny or twenty-penny nails would be overloaded and sheared. He stated that the connectors should have had greater capacity for carrying shear and tension than the nails had. In the expert's opinion, either lag screws or through bolts with a backup plate across the studs would have been appropriate connectors. The expert further testified that, according to a manual of the American Institute of Timber Construction, the bending stress of the wood used in the canopy was excessive. In response to another hypothetical, the expert testified that if the truck in question were hung up on the canopy, a man of plaintiff's size pushing the truck away from the building could not have exerted sufficient force to pull sixteen- or twenty-penny nails loose from the studs of the building.

We believe that this testimony of the expert plus the undisputed fact of the canopy's collapse constituted sufficient evidence to submit to the jury the question of improper construction as the cause of the collapse.

▮ While delivering mail to defendant's premises, plaintiff was an invitee of the tenant post office. *Davidson v. International Shoe Company*, 427 S.W.2d 421, 423 (Mo.1968). It is the general rule in Missouri that a landlord is not liable to his tenants or to his tenants' invitees for injuries caused by a dangerous condition that existed when the tenant took possession. *Warner v. Fry*, 360 Mo. 496, 228 S.W.2d 729, 730 (1950). An exception arises when, at the time the lease is executed, a dangerous condition exists on the premises involving unreasonable risk of physical harm. *Reckert v. Roco Petroleum Corp.*, 411 S.W.2d 199, 205 (Mo.1966). If the condition is known to the landlord, unknown to the tenant, and not discoverable by the tenant exercising ordinary care, then the landlord has a duty to disclose its existence to the tenant. *Id.* The landlord is liable to the tenant or his invitees for injuries resulting from the undisclosed or concealed condition. *Id.*

The key element of this exception is the landlord's knowledge of the dangerous condition. In the present case, defendant constructed the building and then leased the premises to the post office. Builder and landlord are the same entity. It has been suggested that where "the landlord constructed the premises or supervised their construction, he should be presumed to have knowledge of any latent defects in the original construction of the building." Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability?*, 1975 Wis.L.Rev. 19, 125, *quoted in Henderson v. W. C. Haas Realty Management, Inc.*, 561 S.W.2d 382, 387 (Mo.App.1977). *See also Ragland v. Rooker*, 124 Ga.App. 361, 183 S.E.2d 579, 583 (1971) (exemplifying Georgia's conclusive presumption of knowledge of defect where landlord has defectively constructed premises). This theory of actual or constructive knowledge was adopted in *Streckenfinger v. Bullock*, 60 S.W.2d 661 (Mo.App.1933). In that case, the court stated that the defendant-landlord "must be held in law to have had knowledge" of a latent negligent defect in a banister that defendant's husband constructed under her direction and observation. *Id.* at 662–63.

In the present case, if the jury had found that the canopy's condition was dangerous because defendant failed to adhere to sound construction methods and standards as

shown by the expert's testimony, then the jury could have found that defendant constructively knew of the dangerous condition. Furthermore, based upon the expert's testimony, the jury could have found that the dangerous condition was latent or undetectable by the average person inspecting the canopy, such that defendant was obligated to warn the tenant of the danger. Plaintiff's testimony showed that he was unaware of any defects in the canopy's construction or attachment.

We conclude, therefore, that the trial court erred in granting defendant's motion for directed verdict at the close of plaintiff's case. Judgment reversed and remanded for retrial.

REINHARD and CRIST, JJ., concur.