**THIRD DIVISION
DILLARD, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 29, 2024**

# In the Court of Appeals of Georgia

A24A0937. FIRST COMMUNITIES MANAGEMENT, INC. v. TEARRIA BYRD, AS ADMINISTRATOR OF THE ESTATE OF SHAMECIA BYRD et al.

HODGES, Judge.

In this wrongful death action, we are asked to decide whether a landlord's attempt to limit its liability for the intentional criminal acts of third parties, by requiring a prospective tenant to execute a written waiver of liability for such acts, violates Georgia public policy as codified at OCGA § 13-8-2 (b). Tearria Byrd, as the administrator of Shamecia Byrd's estate, sued First Communities Management, Inc. ("FCM") after Shamecia Byrd was killed inside her apartment at a complex managed by FCM.[1] The Superior Court of Gwinnett County denied FCM's motion for

---

[1] Jamarc Taylor and Eric Wilkins, each as the legal guardian of Shamecia Byrd's two additional children, joined Tearria Byrd's complaint.

summary judgment and FCM appeals, arguing that the trial court erred in concluding that an exculpatory clause contained in the parties' lease agreement, purporting to absolve FCM from liability for the criminal acts of third parties, violated Georgia public policy and is, therefore, void and unenforceable. Finding no error, we affirm.

Our standard of review is well-settled:

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the . . . denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303-304 (664 SE2d 296) (2008). So viewed, the record reveals that Shamecia Byrd (hereinafter, "Byrd") resided in Apartment 0111 at the Oxford Apartments in Lawrenceville, Gwinnett County. FCM is the managing agent of the apartment complex. Around midnight on the evening of June 15-16, 2020, an unknown assailant fired several gunshots at Byrd's

apartment from an adjacent roadway. One of the bullets struck and killed Byrd as she was lying in bed.[2]

Tearria Byrd, as the administrator of Byrd's estate, along with the personal representatives of Byrd's two children, filed a wrongful death action against FCM asserting causes of action for failure to keep the premises safe, maintaining a nuisance, failure to repair, negligent hiring, training, supervision and retention, and voluntary undertaking (or, that FCM voluntarily undertook the duty to maintain safe premises). In general, the plaintiffs alleged that the Oxford Apartments were beset by a history of violence prior to the June 2020 shooting, yet did nothing to protect its residents.

Contemporaneously with its answer, FCM filed a motion to dismiss the plaintiffs' complaint or, alternatively, for summary judgment in its favor. However, the trial court noted that FCM's motion depended upon facts outside the pleadings (namely, the parties' lease agreement); as a result, the trial court ordered the parties to conduct discovery and for FCM to file an amended motion for summary judgment 30 days after the close of discovery.

---

[2] As of the date of the trial court's order under review, the assailant had not been found.

After discovery, FCM filed a motion for summary judgment on the plaintiffs' claims. The primary thrust of its argument was that Byrd executed a lease agreement containing both an exculpatory clause in Section 15 (the "exculpatory clause") and a 4-page addendum form entitled "Crime Warning and Limitation of Liability" (the "crime addendum") that insulated it from liability for criminal acts by third parties. The lease agreement also purported to release FCM from liability for claims related to the failure to provide security and the failure to prevent crime in common areas. In response, the plaintiffs argued that the exculpatory clause violated Georgia's public policy under OCGA § 13-8-2,[3] that it did not abrogate a landlord's general duty to

---

[3] OCGA § 13-8-2 provides, in relevant part, as follows:

(a) A contract that is against the policy of the law cannot be enforced.

...

(b) A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, . . . purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability

4

maintain safe premises under OCGA § 51-3-1, and that, as a result, it was unenforceable. For purposes of the summary judgment motion only, the parties stipulated that the roadway from which the gunshots were fired, and which separated the Oxford Apartments from another apartment community, "was a common area over which FCM" had at least some level of control.

After exhaustively identifying the parties' arguments, the trial court concluded that the exculpatory clause and the crime addendum were part of a residential lease agreement and, as a result, were subject to OCGA § 13-8-2 (b). The trial court also determined that the exculpatory clause and the crime addendum "impermissibly promise[d] to indemnify or hold harmless a party for damages arising from that own party's sole negligence[.]" As a result, the trial court concluded that the exculpatory clause and the crime addendum violated public policy and were void and unenforceable pursuant to OCGA § 13-8-2 (b). Although the trial court noted that it

or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable.

5

did not need to consider "additional grounds on which the clauses are unenforceable[,]" it found that the exculpatory clause and the crime addendum were also void under OCGA § 13-8-2 (a) because they violated the principle in OCGA § 51-3-1 that a landlord owes "a nondelegable, statutory duty of ordinary care toward invitees[.]" Finally, having concluded that the exculpatory clause and the crime addendum were void and unenforceable, the trial court applied the lease agreement's severance clause and struck the exculpatory clause and the crime addendum from the lease agreement. As a result, the trial court denied FCM's summary judgment motion, but granted it a certificate of immediate review. We granted FCM's application for interlocutory appeal, and this appeal follows.

FCM raises two enumerations of error alleging that the trial court erred in: (1) denying FCM's summary judgment motion on the basis that the exculpatory clause and the crime addendum violated public policy and were, therefore, void pursuant to OCGA § 13-8-2;[4] and (2) severing the entire crime addendum from the lease agreement instead of only those portions which violated public policy. We address each argument in turn.

---

[4] The enumeration does not distinguish between paragraphs (a) and (b) of OCGA § 13-8-2, both of which were addressed by the trial court.

1. FCM first contends that the trial court erred in concluding that the exculpatory clause and the crime addendum violated public policy and were therefore void under OCGA § 13-8-2. We disagree.

At the outset, the trial court aptly noted that a "landlord's liability for third-party criminal conduct arises under OCGA § 51-3-1." (Citation and punctuation omitted.) *Cham v. ECI Mgmt. Corp.*, 311 Ga. 170, 181 (3) (856 SE2d 267) (2021). OCGA § 51-3-1 provides that

> [w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

For purposes of this statute, "[a] landlord's tenant . . . would be an invitee. . . ." *Behforouz v. Vakil*, 281 Ga. App. 603, 604 (636 SE2d 674) (2006). While "a landlord is not an ensurer of his tenant's safety[,] . . . landlords do have a duty to exercise ordinary care to prevent foreseeable third-party criminal attacks upon tenants." *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 97 (3) (645 SE2d 559) (2007). Given this duty, we have held that a residential landlord may be held liable for crimes

committed against tenants in a leased residence where the crime resulted from the landlord's failure to take appropriate steps to secure the resident's safety. See, e.g., id. at 98 (3) (affirming the denial of landlord's motion for summary judgment in a case brought when tenant was murdered in his mobile home after the landlord terminated security measures); *Mason v. Château Communities*, 280 Ga. App. 106, 113-114 (2) (633 SE2d 426) (2006) (reversing grant of summary judgment to landlord where tenant was raped in her mobile home), disapproved in part on other grounds by *Ga. CVS Pharmacy v. Carmichael*, 316 Ga. 718, 730, 732 (II) (c) (890 SE2d 209) (2023); see generally OCGA § 51-3-1.

Even so, "[a]s a general rule, a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, except when such agreement is prohibited by statute." (Citation and punctuation omitted.) *Milliken & Co. v. Ga. Power Co.*, 306 Ga. 6, 8 (1) (829 SE2d 111) (2019). One such statutory prohibition may be found in OCGA § 13-8-2 (a), which provides, generally, that "[a] contract that is against the policy of the law cannot be enforced." Furthermore, OCGA § 13-8-2 (b) states:

> A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction,

alteration, repair, or maintenance of a building structure, appurtenances, and appliances, . . . purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee, including its, his, or her officers, agents, or employees, against liability or claims for damages, losses, or expenses, including attorney fees, arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee, or its, his, or her officers, agents, or employees, is against public policy and void and unenforceable.

Therefore, "in order to fall within the ambit of [OCGA § 13-8-2 (b)], an indemnification provision must (1) relate in some way to a contract for 'construction, alteration, repair, or maintenance' of certain property and (2) promise to indemnify a party for damages arising from that own party's sole negligence." *Kennedy Dev. Co. v. Camp*, 290 Ga. 257, 259 (719 SE2d 442) (2011). We first discuss each component of OCGA § 13-8-2 (b).

(a) *OCGA § 13-8-2 (b)'s Applicability to Byrd's Residential Lease Agreement.* It has long been the law that OCGA § 13-8-2 (b), though facially only related to contracts "relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances," also applies to residential lease agreements. See *Power v. Toccoa Dreams*, 367 Ga. App. 116, 120 (2) (a) (885 SE2d 82) (2023); see also

9

*Milliken & Co.*, 306 Ga. at 10 (1) (a) (noting that "Georgia courts have consistently construed OCGA § 13-8-2 (b) broadly") (punctuation omitted); *Kennedy Dev. Co.*, 290 Ga. at 259 ("Georgia courts have consistently construed this statute more broadly than courts in other jurisdictions have construed analogous statutes."). In fact, our Supreme Court has observed that "in addition to its application to more traditional construction contracts, . . . the statute has been applied to commercial and residential lease agreements bearing little or no relationship to any ostensible building construction." Id. at 259-260.

FCM nominally argues that the exculpatory clause and the crime addendum do not violate OCGA § 13-8-2 (b) because they do not relate in some way "to a contract for 'construction, alteration, repair, or maintenance' of certain property[.]" See *Milliken & Co.*, 306 Ga. at 9 (1). However, construing OCGA § 13-8-2 (b) liberally, there can be no reasonable dispute that the exculpatory clause and the crime addendum contain "[a] covenant, promise, agreement, or understanding" that is "in connection with or collateral to a contract or agreement" — in this case, the parties' lease agreement — that relates to "the . . . maintenance of a building structure[.]" As

a result, we conclude that this component of OCGA § 13-8-2 (b) is satisfied in this case. See *Kennedy Dev. Co.*, 290 Ga. at 259-260; *Power*, 367 Ga. App. at 121 (2) (a).

(b) *OCGA § 13-8-2 (b)'s Applicability to the Release of FCM for its Sole Negligence.* A closer question is presented by the second component of OCGA § 13-8-2 (b), requiring "one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee . . . against liability or claims for damages . . . arising out of bodily injury to persons, death, or damage to property caused by or resulting from the *sole negligence* of the indemnitee[.]" (Emphasis supplied.) FCM argues that the exculpatory clause and the crime addendum "do not promise to release FCM for its sole negligence as prohibited by OCGA § 13-8-2 (b)." Again, we disagree.

Our starting point is the language of the contract at issue. See *Rayfield v. Pope, McGlamry, Kilpatrick, Morrison & Norwood, P. C.*, 365 Ga. App. 674, 677 (879 SE2d 834) (2022). The exculpatory clause, contained in Section 15 of the parties' lease agreement, provides, in part, that

> Management and the apartment owner shall not be liable to Resident for crimes, injuries, loss, or damage due to criminal acts of other parties. . . . Management does not market, advertise, represent, offer, or provide

11

security or law enforcement services which will prevent crime or protect Resident or Resident's personal property. Management and the owner do not represent or guarantee that the Resident is safe from crime in the neighborhood or from crime in the apartment or apartment community. Resident agrees to look solely to public law enforcement, emergency services, or fire services for police, emergency, fire, security, or protection services. Resident acknowledges that he or she has an obligation to exercise due care for his or her own safety and welfare at all times and that Management is not liable to Resident for the criminal acts of other persons. Resident agrees that he or she will not and cannot rely on the existence or absence of security equipment or personnel as a representation of safety from crime and understands that he or she must be vigilant and exercise caution for their personal safety at all times. *Resident waives and releases the apartment owner and Management for any liability, injury, loss, or damages related to crimes committed by other persons against Resident or related to allegations that the owner or Management were negligent or failed to provide security or protection to prevent crime.* (Emphasis supplied.)

These principles are, by and large, renewed in spirit in the crime addendum, Section 9 of which provides, in pertinent part,

Resident expressly waives and releases Owner or Management from *any* liability or any negligence claim based on alleged criminal acts of others pertaining to any condition, defect, action, or failure to act in the common areas of the apartment community to the fullest extent allowed

by law, including, but not limited to, claims pertaining to alleged negligence in preventing or failing to prevent crime in the apartment with regard to the safety, maintenance, or conditions in the common areas of the apartment community. Resident acknowledges and agrees that it is impossible for the Owner or Management to known when or how a crime may be committed or to prevent a crime from happening. The Owner and Management are not responsible or liable for the criminal acts of others who violate the law and cause injury or property loss to Resident or Resident's occupants, family members, social guests, visitors, or invitees, except as may otherwise be provided by law.

*This Addendum and this contractual provision limit the ability of Resident to sue for or to recover civil damages from the Owner or Management for crimes committed against the Resident or loss of Resident's property by others under certain conditions.*

*Resident agrees that the Owner and Management are not guarantor's* [sic] *of Resident's safety and agrees to waive, release, and forego any premises liability claim for personal injuries or property loss due to crime committed by others, including, but not limited to, those claims based on the Owner's duty to keep the common areas safe from crime.* Resident knowingly waives and releases the Owner and Management from any claim for alleged negligence for failure to keep the common areas of the apartment community safe from crime. (Emphasis omitted, supplied, and in original.)

"[T]he cardinal rule of construction is to ascertain the contracting parties' intent, and where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." (Citation and punctuation omitted.) *Rayfield*, 365 Ga. App. at 677. Here, FCM contends that the exculpatory clause and the crime addendum may be read to "apply only to damages caused by the criminal acts of third parties in common areas . . . and . . . exclude FCM's sole negligence." However, singularly focusing on these provisions does not comport with the plain language of the lease agreement in its entirety, and we do not think these provisions can be read so narrowly. For example, Section 15 of the lease agreement provides that "Resident waives and releases the apartment owner and Management for *any* liability, injury, loss, or damages related to crimes committed by other persons[.]" (Emphasis supplied.) Similarly, the crime addendum states that

> Resident agrees that the Owner and Management are not guarantor's [sic] of Resident's safety and agrees to waive, release, and forego *any premises liability claim for personal injuries or property loss due to crime* committed by others, *including, but not limited to, those claims based on the Owner's duty to keep the common areas safe from crime*. (Emphasis supplied and in original.)

14

To start, "any" is chiefly defined as "one or some indiscriminately of whatever kind[.]" www.merriam-webster].com/dictionary/any (last visited Aug. 12, 2024). See also *Dean v. Dean*, 361 Ga. App. 698, 702 (1) (865 SE2d 292) (2021) ("This Court has long recognized that dictionaries may supply the plain and ordinary meaning of a word.") (citation and punctuation omitted). And clauses that seek to waive "any claims" or "all claims" have routinely been found to violate OCGA § 13–8-2 (b). See, e.g., *Kennedy Dev. Co.*, 290 Ga. at 258, 260-261 (holding that clause providing for indemnity for "any and all … debts, claims, actions, damages, judgments or costs … related to the construction, maintenance, repair, or operation" of project, without limitation based on who is at fault, violated OCGA § 13-8-2 (b)); *Lanier at McEver v. Planners & Engineers Collaborative*, 284 Ga. 204, 206-208 (2) (663 SE2d 240) (2008) (concluding that clause, which applied to "any and all claims" by third parties and shifted liability to party "no matter the origin of the claim or who is at fault[,]" violated OCGA § 13-8-2 (b)); *Frazer v. City of Albany*, 245 Ga. 399, 402 (2) (265 SE2d 581) (1980) (finding that indemnity provisions in lease agreement that referenced "all claims" and "any loss or damage to property, or any injury to or death of any person" violated public policy). Moreover, Byrd correctly points to the Supreme Court of

Georgia's recent decision in *Carmichael*, 316 Ga. at 740 (III), for the principle that if FCM "negligently fails to prevent a third-party crime, the third party has 'acted deliberately, as opposed to negligently,' and FCM would remain the solely negligent actor." (Emphasis omitted.) In other words, if a jury concluded that the shooter in this case acted deliberately, it could still conclude that FCM negligently failed to discourage the shooter's actions and that FCM was, therefore, the sole negligent party. See id. Based upon these factors, and contrary to FCM's argument, we conclude that FCM's attempt to waive "*any* premises liability claim for personal injuries or property loss due to crime committed by others" includes a waiver even for FCM's sole negligence, which is prohibited by OCGA § 13-8-2 (b).

Our conclusions are buttressed by precedent from our Supreme Court. In *Country Club Apartments v. Scott*, 246 Ga. 443 (271 SE2d 841) (1980), the Court confirmed that public policy, as expressed in OCGA § 13-8-2 (b)'s predecessor statute, "was applicable to exculpatory clauses in lease contracts" and that a lease exculpatory clause could not safeguard the landlord from allegations that a plaintiff suffered carbon monoxide poisoning due to a faulty gas pipe in her apartment. Id. at 444. See also *Country Club Apartments v. Scott*, 154 Ga. App. 217, 217-218 (267 SE2d

16

811) (1980). In affirming the trial court's denial of summary judgment, the Supreme Court clarified that public policy prevented a residential landlord from waiving or otherwise avoiding its statutory responsibilities to keep the premises in repair and to be responsible for damages arising from the alteration, repair or maintenance of the building. *Country Club*, 246 Ga. at 444.

Since *Country Club*, numerous cases have held that OCGA § 13-8-2 (b) prohibits certain exculpatory clauses in leases. See, e.g., *Kennedy Dev. Co.*, 290 Ga. at 259-260 (stating, in context of property claims involving run-off water from pond, that "the statute has been applied to commercial and residential lease agreements bearing little or no relationship to any ostensible building construction") (citation omitted); *Borg-Warner Ins. Finance Corp. v. Executive Park Ventures*, 198 Ga. App. 70, 71 (400 SE2d 340) (1990) (noting that, in case involving fire, "[l]eases are among those contracts that are included within the ambit of the public policy prohibition established by OCGA § 13-8-2 (b)"); *Barnes v. Pearman*, 163 Ga. App. 790, 792 (294 SE2d 619) (1982) (opining that "it is apparent that the Supreme Court [in *Country Club Apartments*] intended to strike down exculpatory clauses in all leases").

Similarly, in *Power*, this Court held that OCGA § 13-8-2 (b) applies to residential real estate contracts, rejecting a property owner's claim that an exculpatory clause in a rental agreement shielded it from liability for its sole negligence. 367 Ga. App. at 120-121 (2) (a). In that case, the exculpatory clause provided that the tenant would hold the property owner harmless "from *any* responsibility or liability . . . resulting from *any* loss, damage or personal injury incurred by any guest on the rental cabin premises." (Punctuation omitted; emphasis in original.) Id. at 117 (1).

While these cases indicate that many exculpatory provisions are impermissible, none addressed exculpatory clauses concerning criminal acts by third parties. Notably, in the unique context of condominium associations, this Court has upheld clauses very similar to the one at issue here. To that end, FCM relies heavily on *Sadlowski v. Beacon Mgmt. Svcs.*, 348 Ga. App. 585 (824 SE2d 42) (2019), in which this Court upheld a grant of summary judgment finding that under the applicable condominium declarations, the homeowners association had no duty to provide security and that the contract explicitly placed the responsibility for each resident's security solely with the resident. Id. at 590 (1). This Court concluded that the exculpatory clause did not conflict with the Georgia Condominium Act and that a condominium association

18

could circumscribe its duty to its members under OCGA § 51-3-1. See also *Bradford Square Condo. Assn. v. Miller*, 258 Ga. App. 240 (573 SE2d 405) (2002) (upholding condominium association by-laws which provided that the association was not a provider of security and that each unit owner was responsible for his own security); *Thapa v. Lakeshore Atlanta Apartments*, No. 1:13-CV-1031-AT, 2014 U. S. Dist. LEXIS 206339 at *20 (III) (c) (N.D. Ga., Mar. 31, 2014) (granting summary judgment to apartment owner and upholding similar exculpatory clause regarding failure to provide common area security measures).

However, *Sadlowski* and *Bradford Square* do not apply here. In particular, *Bradford Square*, which did not consider OCGA § 13-8-2 but is nevertheless instructive, focused on the fact that the condominium owners voted to remove security from the property; thus, while the condominium association retained a duty of maintenance, that duty no longer included security. 258 Ga. App. at 246-247 (1) (a). We then took great pains to highlight the limited nature of our holding:

> We reject appellee's attempt to disregard the clear distinctions and limitations we have carefully drawn in this case *based upon the unique interrelationship between a condominium association and the unit owners/members that are, in fact, the association*. The Bradford Square condominium owners, of which Mrs. Miller was one, *are* the Bradford

19

Square Condominium Association, and the owners/members may, through the condominium instruments, contractually limit the control and the duties of the Association solely toward themselves in a manner that does not conflict with the Act. *We were not asked to decide in this case a condominium association's duty toward nonmembers/owners pursuant to OCGA § 51-3-1.* And we have already recognized herein an association's duty to its members/owners pursuant to OCGA § 51-3-1 that is also in harmony with the express terms of the condominium instruments and the Act. Moreover, none of the landlord/tenant and owner/invitee premises liability cases cited to us by appellee apply to this case of first impression involving the liability of a condominium association solely toward its members/owners pursuant to the terms of both the condominium instruments and the Act.

258 Ga. App. at 249 (on motion for reconsideration). Finally, FCM has cited no relevant authority to support its argument that landlords should be able to contractually avoid some level of security obligations. See *Barnes*, 163 Ga. App. at 792 (holding that exculpatory and indemnity provision in commercial lease was void as against public policy); see also *Bradford Square*, 258 Ga. App. at 250 (citing OCGA § 51-3-1, which requires landowner "to exercise ordinary care in keeping the premises and approaches [of a property] safe," and finding "that when applied to the criminal

acts of third parties, 'safety' is accomplished through 'security' measures")
(footnotes omitted).

In short, the exculpatory clause and the crime addendum satisfy "both conditions upon which application of the anti-indemnity statute depends, and the indemnification provision[s] [are] thus rendered invalid." *Kennedy Dev. Co*., 290 Ga. at 261. Accordingly, we conclude that the trial court did not err in denying FCM's summary judgment motion.[5]

(c) *Additional Arguments*. In view of our decision in Division 1 (b) that the exculpatory clause and the crime addendum violate OCGA § 13-8-2 (b) and are unenforceable, we need not address the trial court's alternative basis for denying FCM's summary judgment motion based upon OCGA § 13-8-2 (a). See *Lanier*, 284 Ga. at 209 (3).

---

[5] Our Supreme Court's recent decision in *Omstead v. BPG Inspection* does not compel a different result. 2024 Ga. LEXIS 146 (903 SE2d 7) (2024). There, homeowners entered into a contract with BPG, a home inspection company, to conduct an inspection prior to the purchase of a residence. The parties' contract contained a one-year limit of liability, and the Court determined that the one-year limit was enforceable because "it did not purport to relieve or release BPG from liability, because the limitation permitted suit against BPG . . . within a year from the inspection." Id. at *12 (2) (a). Here, there is no such time limitation which would render *Omstead* applicable.

2. Second, FCM contends that the trial court erred in severing the exculpatory clause and the crime addendum from the lease in their entirety. The substance of its argument, however, primarily addresses the crime addendum alone. In support of this argument, FCM only cites generic principles, including "[t]he primary task in determining contract severability remains that of ascertaining the intention of the parties[,]" which may be discerned by direct expressions of intent (such as by including a severability clause) or by indirect expressions ("as when the contract contains promises to do several things based upon multiple considerations"). (Citation and punctuation omitted.) *Bulloch S. v. Gosai*, 250 Ga. App. 170, 175 (1) (b) (550 SE2d 750) (2001). In any event, FCM did not raise this issue at any point in the trial court; as a result, it is precluded from review now. See generally *Matthews v. Yoplait USA*, 352 Ga. App. 591, 597 (835 SE2d 393) (2019) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal.") (citation

and punctuation omitted).[6]

*Judgment affirmed. Dillard, P. J., and Watkins, J., concur in judgment only.*

---

[6] We note that FCM filed a motion for leave to file a supplemental brief, and the Georgia Defense Lawyers Association filed a similar motion seeking leave to file an amicus curiae brief, after oral argument. See Court of Appeals Rules 26 (a) (1) (providing filing schedule for amicus curiae briefs), 27 ("Amicus curiae briefs may be filed after the time periods set out in Rule 26 (a) only with leave of Court."). Although we granted both motions, neither movant filed the supplemental brief as permitted. Accordingly, we have not included the arguments presented in the exhibits to the motions for leave in our analysis of this case. See Court of Appeals Rule 27 (a) ("Supplemental briefs may be filed only by leave of the Court. Counsel may file a motion for permission to file supplemental briefs. Counsel may not file a supplemental brief contemporaneously with the motion, but may include a copy of the supplemental brief with the motion for permission to file as an exhibit. Counsel shall file a supplemental brief, in compliance with the limitation on length at Rule 24 (f), *only after permission to file is granted.*") (emphasis supplied).